IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC. | ) | CIVIL ACTION |
| 500 Water Street | ) | |
| Jacksonville, FL  32202-4423 | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO.:  05-139 Erie |
| | ) | |
| PORT ERIE PLASTICS, INC. | ) | |
| 909 Troupe Road | ) | |
| Harborcreek, PA  16421 | ) | RELATED DOCUMENT NO. 17 |
| | ) | |
| Defendant | ) | ELECTRONICALLY FILED |

**CONCISE STATEMENT OF MATERIAL FACTS**

AND NOW COMES, Port Erie Plastics, Inc., and hereby makes this Statement of Material Fact in support of Defendant's Motion for Summary Judgment and sets forth the following:

1.     On or about February 7, 2002, Port Erie Plastics, Inc. ("Port Erie") entered into a production agreement with NexPak Corporation ("NexPak").  Port Erie received two blanket purchase orders ("Production Agreement") from Nexpak, and Port Erie agreed to produce plastic DVD cases for them. (Ex. A; Ex. D.)

2.     At the time of the Production Agreement both Port Erie and NexPak incorporated an agreement memorialized in a July 13, 2000 letter ("July, 2000 Agreement") dictating the inventory system that was to be used in their normal course of business.  (Ex. A; Ex. C.)

3.        At all times relevant to the instant case, in accord with the Production Agreement, and the July, 2000 Agreement Port Erie purchased specific quantities of the plastic resin raw material, needed for production of the cases, from bulk quantities owned by NexPak.  (Ex. A; Ex. B; Ex. C.)

4.        Pursuant to the July, 2000 Agreement between Port Erie and NexPak, Port Erie utilized a "just in time" inventory system.  In this inventory system, Port Erie took title to specific quantities of said plastic resin only at the moment that Port Erie actually removed the material from silo storage for production. (Ex. A; Ex. C.)

5.        In conformity with the July, 2000 Agreement, Port Erie did not assume ownership or risk of loss of NexPak's bulk plastic resin at any point in its transport to storage, nor during storage of the plastic resin. (Ex. A; Ex. C.)

6.        This business arrangement between NexPak and Port Erie was consistent with the manner in which NexPak generally did business with Port Erie, where NexPak supplied not only the resin, but also the press machinery and other raw materials necessary for production of the cases.  (Ex. L; Ex. M.)

7.        In conformity with the July 13, 2000 agreement, risk of loss for specific quantities of the plastic resin transferred from NexPak to Port Erie only at the time that those quantities of material were delivered to Port Erie's Harborcreek, PA facility. (Ex. A; Ex. B; Ex.C.)

8.      In the normal course of business, Port Erie would account for its purchase from NexPak of the quantities of plastic resin used for production as an offset against amounts invoiced to NexPak for completed orders of DVD cases. (Ex. A.)

9.      Prior to taking title to the resin material, Port Erie acted only in the capacity of agent for NexPak with a limited scope of authority to instruct and pay Presque Isle Trucking to transport the plastic resin owned by NexPak from railroad cars parked at a railroad siding to the storage silo located at Port Erie's Harborcreek facility. (Ex. A.)

10.      In response to NexPak's orders, Port Erie would instruct Presque Isle to transport quantities of plastic resin from the rail cars to Port Erie's Harborcreek facility. (Ex. A.)

11.      Port Erie did not control any aspect of CSX Transportation, Inc.'s ("CSX") transport or constructive placement of plastic resin purchased by NexPak to Erie, Pennsylvania. (Ex. A.)

12.      At all times relevant to the instant case, NexPak retained ownership and control of the bulk plastic resin raw material until such time that it was purchased in specific quantities by Port Erie upon its use in the production to fill orders placed by NexPak. (Ex. A; Ex. B.)

13.      At all times relevant to the instant case, Port Erie did not have authority, nor did it ever attempt to exercise authority, over the placement and/or release of rail cars dedicated to the transport of plastic resin for NexPak. (Ex. A; Ex. J.)

14.     At all times relevant to the demurrage charges that are the subject of the instant lawsuit, Port Erie had neither ownership or control of the bulk plastic resin that was transported in rail cars owned by CSX. (Ex. A; Ex. C.)

15.     Port Erie's only role in relation to the transportation of the bulk plastic resin was to act in the capacity of agent of NexPak in arranging for the transport of the bulk material from the rail cars to the storage facility. (Ex. A.)

16.     Prior to the truck transport of the plastic resin from rail cars to the Harborcreek facility, Port Erie did not have any involvement in the transport or the arrangement of transport of the bulk plastic resin material by CSX from the plastic resin manufacturer to the railroad siding in Erie, Pennsylvania. (Ex. A; Ex J.)

17.     Port Erie did not have a contractual relationship with CSX for the transport of the above referenced bulk plastic resin at any time material to the instant case. (Ex. A; Ex. K, No. 5; Ex. P, Underwood depo., p. 7.)

18.     At all times relevant to the instant case, Port Erie was not a consignee, nor did it ever consent to being designated as a consignee, in the shipment of plastic resin material by CSX for NexPak. (Ex. A.)

19.     CSX admits that it does not have any evidence that Port Erie explicitly consented to being designated a consignee to NexPak's bulk plastic resin materials shipped in rail cars by CSX that are the subject of this litigation. (Ex. I; Ex. K. No. 5; Ex. P, Underwood depo., p. 7.)

20.      All documentation with regard to the relevant rail shipments of resin did not result from any contract or communication directly between CSX and Port Erie. (Ex. A; Ex. P, Underwood depo., pp. 7-8.)

21.      The bill of lading in the present case acknowledges that the resin was purchased by NexPak, and it references Port Erie ambiguously as a "Ship To" address.  (Ex. I.)

22.      Mont Fort Terminal, a facility that is not affiliated with Port Erie, is also referenced as a "Ship To" address. (Ex. I.)

23.      CSX admits that BP Amoco is designated as the guarantor of shipping fees relevant to the present case. (Ex. F, Ex. G; Ex. P, Underwood depo., p. 9.)

24.      Port Erie purchased from Nexpak (as production needs, dictated by NexPak, warranted) specific quantities of the plastic resin from bulk material that was already in storage. (Ex. A; Ex. C; Ex. N, Johnson depo., p. 12.)

25.      Port Erie has repeatedly notified CSX that Port Erie is not a consignee to the subject shipments of plastic resin purchased by NexPak, and that the CSX waybills designating Port Erie as consignee are incorrect. (Ex. A; Ex. O, Witkowski depo., p. 55-56.)

26.      Port Erie did not, at any time relevant to the present cause of action, receive from CSX notice of constructive placement for the shipments of resin that are subject to the instant lawsuit. (Ex. A; Ex. O, Witkowski depo., p. 52; Ex. P, Underwood depo., p. 25.)

27.     After first asserting that CSX provided notice of constructive placement to Port Erie (Ex. E.), CSX now admits that it did not provide Port Erie with notice of constructive placement. (Ex. P, Underwood depo., p. 25.)

28.     CSX admits that it provided notice of constructive placement to Presque Isle Trucking. (Ex. P, Underwood depo., p. 25; Ex. Q, Bartosik depo., p. 53.)

29.     CSX admits that it does not have any admissible evidence that Port Erie designated Presque Isle Trucking to accept any notice of constructive placement on its behalf. (Ex. P, Underwood depo., p. 27; Ex. Q, Bartosik depo., *supra*.)

30.     The tariff promulgated by CSX requires tender of such notice to the appropriate party for demurrage charges to accrue. (Ex. J.)

31.     BP Amoco is consistently listed in waybills as the party responsible for payment of shipping fees. (Ex. F, Ex. G; Ex. P, Underwood depo., p. 9.)

Respectfully submitted,

*s:/ Richard J. Parks.*
Richard J. Parks
Pa Bar I.D.40477
Scott T. Stroupe
Pa. Bar I.D. 89496
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7754
FAX (814) 454-4647
rparks@mijb.com

Attorneys for Defendant
 Port Erie Plastics, Inc.

933035

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that copies of the foregoing Concise Statement of Material Fact on Behalf of Defendant Port Erie Plastics, Inc. was served upon the following attorney of record, via First-Class United States Mail addressed as follows, this 20th day of February, 2006:

Attorney for Plaintiff CSX Transportation, Inc.

Charles L. Howard, Esq.
Janssen Keenan, P.C.
One Commerce Square
2005 Market Street, Suite 2050
Philadelphia, PA  19103


_s:/ Richard J. Parks_
Richard J. Parks, Esq.