IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSX TRANSPORTATION, INC.<br>500 Water Street<br>Jacksonville, FL 32202-4423 : <br> : CIVIL ACTION<br> : <br>Plaintiff : CASE NO 05-139 Erie<br> : <br>v. : <br> : <br>PORT ERIE PLASTICS, INC. : <br>909 Troupe Road : <br>Harborcreek, PA 16421 : <br> : <br>Defendant. : | |

## CSX TRANSPORTATION, INC.'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

Plaintiff, CSX Transportation, Inc. ("CSX"), hereby moves this Court for an Order pursuant to Fed. R. Civ. P. 56 granting summary judgment in its favor and against defendant, Port Erie Plastics, Inc ("PEP") for the following reasons:

1. PEP operated a custom injection molding business using plastic resins shipped to it by rail by one of its customers for use in the manufacture of DVD cases

2. Bills of lading, which identified PEP as the "consignee" of the freight, governed the rail shipments of plastic resin to PEP.

3. CSX is a rail carrier which provides for the interstate transportation of freight and served as the delivering carrier for all of PEP's inbound rail shipments at issue herein.

4. At all relevant times, CSX had a tariff in effect which governed, *inter alia*, a consignee's duties with respect to handling inbound rail cars delivered from CSX, as well as the demurrage charges that applied for failure to handle rail cars in a timely fashion.

5.      Under CSX's tariff, CSX imposes a demurrage charge on a shipper of freight at origin or a consignee of freight at destination ("the customer") using a system of demurrage "credit days" and "debit days" which are added up on a monthly basis. If, at the end of any given month, a customer has accumulated more demurrage debit days than credit days, that customer is charged for the excess debits

6.      Under CSX's tariff, each railcar is allowed two (2) demurrage credit days. Upon arrival at the CSX yard, the conductor of the train notifies CSX that the railcars have, in fact, arrived at the yard. CSX then issues a "constructive placement notice", *via* fax, notifying the customer that the railcar has arrived and is available for placement at the customer's facility for unloading. At that point in time, the customer is responsible for placing an order with CSX to have the railcar physically moved from the CSX yard to the customer's facility

7.      The customer begins incurring debit days at 12:01 am on the day after it receives the constructive placement notice. The customer incurs a debit day for each day that passes by after the constructive placement notice is issued

8.      In this instance, PEP did not have a rail siding to which the plastic resin could be delivered directly   Instead, PEP engaged a motor common carrier to unload the plastic resin from the rail cars into tanker trucks operated by the motor carriers. The motor carrier would then deliver the plastic resin to PEP at PEP's direction

9      Upon notification that rail cars consigned to PEP had arrived at the CSX yard, CSX would send the motor carrier, *via* fax, a constructive placement notice. PEP had designated the motor carrier as the entity to whom such notices should be faxed.

10      Upon receipt of a constructive placement notice, the motor carrier awaited

instructions from PEP to order the car to the motor carrier's lease track for unloading. Upon receipt of such an order, CSX would dispatch a locomotive which would deliver the cars to the motor carrier's lease track. The ordering of a car by the motor carrier would stop the accumulation of demurrage debits.

11. The bills for demurrage which are at issue in this case identify each railcar at issue as well as the date the car arrived, the date on which the motor carrier, acting as PEP's agent, was "notified" of arrival at the CSX yard, the date on which the car was "ordered" by the motor carrier, the date on which the car was actually "placed" on the motor carrier's lease track ("actual placement"), and the date the car was "released" back to CSX after unloading. The bills show that each car received two demurrage credit days. CSX's bills also show how many debit days accumulated between "notification" or constructive placement and the ordering of the cars. Finally, the bills provide monthly totals for the number of cars delivered during the month, the number of credit days, and the number of debit days accumulated.

12. CSX's demurrage tariff provides specifically that it "applies to all CSXT served customers and covers all railroad and private marked freight car(s) held for or by the customer(s)...". More importantly, the tariff states that "[u]nless otherwise advised, in WRITING, that another party is willing to accept responsibility for demurrage, consignor at origin or consignee at destination will be responsible for the payment of demurrage charges."

14. CSX's tariff defines a "consignee" as "[t]he party to whom a shipment is consigned, or the party entitled to receive the shipment."

15. CSX sent fifteen demurrage bills to PEP which itemized the charges

3

incurred by PEP for excess debit days over the credit days allowed for each car. The total amount of said charges is $127,116.00.

16    Under both the Interstate Commerce Act and CSX's demurrage tariff, PEP is liable for the demurrage charges at issue herein.

WHEREFORE, this Court should grant CSX Transportation, Inc.'s Motion for Summary Judgment.

                s/Charles L. Howard
                Charles L. Howard
                Jeffrey D. Cohen
                **JANSSEN & KEENAN P.C.**
                One Commerce Square
                2005 Market Street, Suite 2050
                Philadelphia, PA 19103
                (215) 665-8888
                (215) 665-8887 (fax)

                Attorneys for Plaintiff
                CSX Transportation, Inc.

Dated: February 23, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2006, a copy of the foregoing Plaintiff CSX Transportation, Inc.'s Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 was filed electronically. Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

**Richard J. Parks**, Esquire
MacDonald, Illig, Jones & Britton LLP
100 State Street
Suite 700
Erie, PA 16507-1459


By:  */s/ Charles L. Howard*
Charles L. Howard *(pro hac vice)*
Jeffrey D. Cohen
JANSSEN & KEENAN P.C.
One Commerce Square
2005 Market Street, Suite 2050
Philadelphia, PA 19103
(215) 665-8888
(215) 665-8887 (fax)
E-mail: choward@janssenkeenan.com