IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSX TRANSPORTATION, INC. 500 Water Street Jacksonville, FL 32202-4423 | : : : : CIVIL ACTION : |
| Plaintiff | : CASE NO. 05-139 Erie : |
| v. | : : |
| PORT ERIE PLASTICS, INC. 909 Troupe Road Harborcreek, PA 16421 | : : : : |
| Defendant. | : |

**CSX TRANSPORTATION, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

I.   **INTRODUCTION**

The relevant material facts in this case are not in dispute. CSX Transportation, Inc. ("CSX") delivered rail cars filled with plastic resin for use by defendant, Port Erie Plastics, Inc. ("PEP"). The plastic resin moved in rail cars under bills of lading which designated PEP as the "consignee" of the shipment. Upon arrival of each such rail car at its facility in Erie, Pennsylvania, CSX would notify Presque Isle Trucking ("PIT"), PEP's designated local agent, that the car had arrived for unloading and was available for placement at the Mount Fort Terminal in Erie. When instructed by its principal PEP, PIT would request that CSX move the car from the CSX yard to the track where PIT could unload the contents of the railcar into its trucks. In those instances in which more than two days elapsed before PIT, as agent for PEP, ordered the cars to Mount Fort, PEP incurred demurrage charges as mandated by CSX's tariff and the Interstate Commerce Act.

Unfortunately, on numerous occasions, PEP failed to instruct PIT to order in rail cars that

had been made available for placement within the two days allotted. PEP's defense in this case is (1) that it had no contract with CSX and (2) that it did not have an ownership interest in the plastic resin until the resin had been loaded into its silos. As discussed more fully below, the fact that PEP had neither a contract with CSX nor an ownership interest in the resin while it was being shipped has no legal significance when determining its liability for demurrage in light of its status as the consignee for delivery of the rail cars at issue. There are no factual issues in dispute, and CSX's right to recover can be determined as a matter of law under the governing tariff.

## II.    STATEMENT OF FACTS

CSX incorporates by reference its Concise Statement of Material Facts in Support of its Motion for Summary Judgment as if fully set forth herein.

## III.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Knabe v. Goury, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(citing Fed. R. Civ. P. 56). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 – 48 (1986)(emphasis in original).

2

### B.   Federal Law Requires Rail Freight Carriers to Impose Demurrage Charges for the Untimely Handling of Railcars.

Demurrage is a daily charge imposed by a railroad on a shipper or consignee (receiver) of freight for failure to handle rail cars within a specified period of time after the cars have been actually or constructively placed by the railroad at the shipper's or consignee's disposal for loading or unloading. See Cleveland Electric Illuminating Co. v. Interstate Commerce Commission, 685 F.2d 170 (6th Cir. 1982); Illinois Cent. R. Co. v. Ready-Mix Concrete, Inc., 323 F. Supp. 609 (E.D. La. 1971); St. Louis, Southwestern Railway Co. v. Mays, 177 F.Supp. 182 (E.D. Ark. 1959). A shipper or consignee is provided with a set amount of time known as "free time," to load, unload or otherwise handle a rail car placed at its facility. Free time is "that period of time which, under normal circumstances, affords the shipper a sufficient opportunity to unload a car and release it to the railroad." Cleveland Electric, 685 F.2d at 171, n.1.

The charge for demurrage and the amount of free time allotted are mandated by rail carriers' tariffs which are published by rail carriers, regulated by the U.S. Surface Transportation Board, and available on rail carriers' internet web sites. In fact, federal law specifically *requires* rail carriers to compute and impose demurrage charges in connection with the handling and usage of rail cars. See 49 U.S.C.A. § 10746. The rail carrier is under a duty to collect, and the shipper or consignee is under a duty to pay these charges. St. Louis, Southwestern Railway Co. v. Mays, 177 F.Supp. 182, 184 (E.D. Ark. 1959). Liability for demurrage charges is enforceable under the Interstate Commerce Act, 49 U.S.C.A § 10101 et seq. Delaware and Hudson Railway Co., Inc. v. Offset Paperback Mnfrs., Inc., 126 F.3d 426 (2nd Cir. 1997). Shippers and consignees are held liable for a rail carrier's published tariff rates for demurrage. See Union Pacific Railroad Company v. United States, 490 F.2d 1385 (Ct. Cl. 1974); Atchison, Topeka &

Santa Fe Ry. v. Bouziden, 307 F.2d 230 (10th Cir. 1962); St. Louis, Southwestern Railway Co. v. Mays, 177 F.Supp. 182 (E.D. Ark. 1959).

A carrier may not contractually waive or modify the published demurrage rates. Furniture Forwarders of St. Louis, Inc. v. Chicago, R.I. & P.I. Co., 393 F.2d 537 (8th Cir. 1968); Chicago and Northwestern Railway Co. v. Union Packing Co., 326 F.Supp. 1304 (D. Neb. 1971); Chicago, B. & Q.R. Co. v. Edward Hines Lumber Co., 320 F.Supp. 194 (N.D. Ill. 1970). Because demurrage is a well-established liability in the transportation industry, Prince Manufacturing Co. v. United States, 437 F.Supp. 1041 (N.D. Ill. 1977), a sophisticated shipper or consignee will be found to have knowledge of the custom and practice of paying demurrage. See Shaver Transportation Co. v. Louis Dreyfus Corp., 414 F.Supp. 1040 (D. Oregon 1976). Demurrage charges are imposed even when the delay in loading or unloading the rail cars occurs through no fault of the shipper or consignee. Union Pacific Railroad Company v. United States, 490 F.2d 1385 (Ct. Cl. 1974).

### 1. As the Consignee for the Shipments at Issue, PEP is Liable for the Demurrage Charges Herein.

In the instant case, it is undisputed that CSX transported the plastic resin in rail cars under bills of lading on which PEP was clearly designated as the sole "consignee" of the shipments. It is also undisputed that CSX's demurrage tariff imposes liability for demurrage charges on consignees who fail to order rail cars for actual placement within two (2) days of receiving notice of their constructive placement. It is also undisputed that the demurrage invoices submitted by CSX to PEP accurately reflect the demurrage charges incurred by PEP.

CSX's demurrage tariff provides specifically that it "applies to all CSXT served customers and covers all railroad and private marked freight car(s) held for or by the customer(s)...". CSXT 8100; at Item 8000, p.2. More importantly, the tariff states that

4

"[u]nless otherwise advised, in WRITING, that another party is willing to accept responsibility for demurrage, consignor at origin **or consignee at destination will be responsible for the payment of demurrage charges.**" CSXT 8100 at Item 8070 (G), p. 7 (emphasis added). The tariff defines a "consignee" as "the party to whom a shipment is consigned, or the party entitled to receive the shipment." CSXT 8100 at p. 11.

CSX's tariff further states that demurrage on cars held by the railroad "as a result of conditions attributable to consignor or consignee" shall be computed from "the first 0001 hours ... after tender [i.e., constructive placement] until release or placement on private tracks on (1) loaded private car(s) - while held on railroad tracks." CSXT 8100 at p.6 Item 8060 (E)(1),[1] Item 8075 indicates that rail cars will receive demurrage credits for the first two days, and cars held in excess of those two days will result in a $60.00 per day demurrage charge. CSXT 8100 at Item 8075, p. 8. Finally, CSXT 8100 defines a "consignee" as "[t]he party to whom a shipment is consigned, or the party entitled to receive the shipment." CSXT 8100 at p. 11.

In the course of providing rail services to PEP, CSX frequently had to hold rail cars for extended periods at its terminal in Erie due to delays caused by PEP failing to timely order the cars for actual placement at the Mount Fort Terminal, a situation which triggered liability for demurrage charges pursuant to CSX's tariff. CSX calculated its demurrage charges from the time it issued a constructive placement notice to PIT, operating as PEP's agent, that the cars were ready to be placed, until the time it received an order to place the cars at the track at the Mount Fort Terminal. The bills submitted to PEP for the demurrage charges clearly show the number of days which elapsed between the date cars were constructively placed and the date on which they

---

[1] In PEP's case CSX stopped the demurrage clock upon PEP's ordering of a car which had been constructively placed and did not wait until actual placement to stop the clock.

5

were actually ordered to the track at Mount Fort. They also showed the total number of days for which PEP was charged. Finally, they show the application of the $60.00 charge for each excess debit day. Accordingly, PEP is liable for the demurrage charges herein, and this Court must grant CSX's motion for partial summary judgment as a matter of law.

   2.   **PEP Has Not Raised a Legally Cognizable Defense to CSX's Claims.**

As noted above, PEP's defense is twofold: (1) that it had no contractual relationship with CSX involving any transportation services and (2) that it was not the owner of the plastic resin until it was unloaded into its silos. Neither defense has any merit in light of numerous decisions by federal courts which have held that a consignee of freight is liable for demurrage. For example, in Illinois Central Railroad Co. v. South-Tec Development Warehouse, Inc., 337 F.3d 813 (7th Cir. 2003), the Court determined that it could hold the defendant liable for demurrage charges if it were either "a consignee *or* if it contractually assumed responsibility for demurrage charges." South-Tec, 337 F.3d at 820 (emphasis added). It is PEP's status as the sole consignee of the freight shipments, along with the application of CSX's tariff, which renders PEP liable for demurrage charges.

The United States Supreme Court has held that "the bill of lading is the basic transportation contract between the shipper – consignor and the carrier; its terms and conditions bind the shipper and connecting carrier." Southern Pacific Transportation Co. v. Commercial Metals Co., 456 U.S. 336, 102 S.Ct. 815, 72 L.Ed.2d 114 (1982). Bills of lading typically include freight rates negotiated between the shipper and carrier, as well as routing instructions. Here, PEP argues that it was not a party to the bills of lading which governed the shipments at issue and, therefore, cannot be held liable for demurrage.

Except in rare instances such as collect shipments, consignees play no role in the

negotiation of rates with a rail carrier, the payment of freight rates to a rail carrier, the routing of freight by a rail carrier, or the preparation of the bill of lading. In the instant case, the bills of lading identify PEP as consignee; however, PEP, just like virtually every other consignee of shipments of freight in interstate commerce, had no participation in negotiating the terms of the bill of lading with the rail carrier.

The fact that PEP had no role in the preparation of the bill of lading has no bearing on whether or not it is considered a party to the contract of transportation, which is the bill of lading See Middle Atlantic Conference et al v. U.S.A. & Interstate Commerce Commission, 353 F.Supp. 1109 (D.D.C. 1972) In the Middle Atlantic Conference case, the court rejected an attempt to expand demurrage liability to entities which were not parties to the contract of transportation. In its opinion, the court identified those persons named in the bills of lading as consignors or consignees as parties to the contract of transportation. See Middle Atlantic Conference, 353 F.Supp. at 1112.

As the United States Surface Transportation Board ("STB") has explained, the fact that the entity seeking to avoid demurrage was not a party who participated in preparing the bill of lading has absolutely no legal significance when determining whether of not it is obligated to pay rail car demurrage charges. R. Franklin Unger, Trustee of the Indiana Hi-Rail Corporation, debtor – Petition for Declaratory Order - - Assessment and Collection of Demurrage and Switching Charges, STB Docket No. 42020 (June 14, 2000), available at 2000 STB LEXIS 333, a copy of which is appended hereto as Exhibit "A." In Unger, the party seeking to avoid demurrage (Wilson) was the shipper on a bill of lading. The party seeking demurrage charges was the origin rail carrier. The parties to the bill of lading were the destination rail carrier and the consignee. Moreover, the consignee was responsible to the destination carrier for the line-

7

haul charges.

Wilson argued that any obligation to pay demurrage would necessarily arise out of the bill of lading, and that the obligation must be evidenced on the bill of lading. The STB disagreed, finding that the obligation to pay demurrage arose, instead, exclusively out of the railroad's lawful demurrage tariff. Unger at 8, and 11 - 15.

PEP's defense is identical to the defense offered by Wilson which the STB rejected. PEP is the consignee on the bill of lading and seeks to avoid demurrage assessed by CSX, the destination carrier, because it was the shipper who was the participating party to the bills of lading, and not PEP. In Unger, it was Wilson, the shipper, which sought to avoid demurrage assessed by the origin carrier because it was the consignee who was the participating party to the bill of lading, and not Wilson. Neither PEP nor Wilson was responsible for the line haul freight charges. None of that, however, matters. It was Wilson which detained the origin carrier's rail cars thus incurring demurrage charges under the carrier's lawful demurrage tariff at origin. Here, it is PEP which detained CSX's rail cars at destination thus incurring demurrage charges under CSX's lawful tariff.

The term consignee is mentioned, but not defined, in the Interstate Commerce Act. As a result, the Courts have applied the term within the context of its ordinary commercial meaning. In a definition cited to by Black's Law Dictionary, 389 (4th ed.), the United States Court of Appeals for the Ninth Circuit states as follows:

> There being no definition of the word "consignee" contained in the act, it must be assumed, as was held in United States v. Eighty-Seven Barrels, etc. of Wine (D.C.) 180 Fed. 215, that "Congress used it in its ordinary commercial and legal signification," and which plainly means (page 220) "that person or corporation to whom the carrier may lawfully make delivery of the consigned goods in accordance with its contract of carriage."

8

Great Northern Pacific S.S. Co. v. Rainer Brewing Company, 255 F 762 9th Cir. 1919)

In the instant case, PEP was clearly named as the sole consignee on the bills of lading generated by the shipper of the freight at issue. The significance of this is that PEP or its agent was the only person to whom CSX could make lawful delivery of the freight. Recognition of PEP's status as the consignee and application of CSX's demurrage tariff which imposes demurrage obligations on consignees are all that is required to hold PEP responsible for the demurrage charges herein. Accordingly, PEP is liable for the demurrage charges herein, and this Court must grant CSX's motion for partial summary judgment as a matter of law.

## IV. CONCLUSION

Because there are no material facts at issue, CSX moves this Court for the entry of summary judgment against PEP for unpaid demurrage charges in the amount of $127,116.00 together with interest, costs and attorney's fees.

Respectfully submitted

/s/ Charles L Howard
Charles L. Howard
Jeffrey D. Cohen
**JANSSEN & KEENAN P.C.**
One Commerce Square
2005 Market Street, Suite 2050
Philadelphia, PA 19103
(215) 665-8888
(215) 665-8887 (fax)
E-mail:  choward@janssenkeenan.com

Attorneys for Plaintiff
CSX Transportation, Inc

Dated: February 23, 2006

9

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2006, a copy of the foregoing Plaintiff CSX Transportation, Inc.'s Memorandum of Law in Support of Its Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**Richard J. Parks**, Esquire
MacDonald, Illig, Jones & Britton LLP
100 State Street
Suite 700
Erie, PA 16507-1459


By:   */s/ Charles L. Howard*
    Charles L. Howard *(pro hac vice)*
    Jeffrey D. Cohen
    JANSSEN & KEENAN P.C.
    One Commerce Square
    2005 Market Street, Suite 2050
    Philadelphia, PA 19103
    (215) 665-8888
    (215) 665-8887 (fax)
    E-mail: choward@janssenkeenan.com