IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSX TRANSPORTATION, INC.<br>500 Water Street<br>Jacksonville, FL 32202-4423 : | CIVIL ACTION |
| Plaintiff : | CASE NO. 05-139 Erie |
| v. : | |
| PORT ERIE PLASTICS, INC<br>909 Troupe Road<br>Harborcreek, PA 16421 : | |
| Defendant. : | |

## CSX TRANSPORTATION, INC.'S CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff, CSX Transportation, Inc. ("CSX"), pursuant to Local Rule 56 1(B)(1), hereby submits its separate and concise statement of the material facts as to which it contends there is no genuine issue to be tried.

1. Defendant Port Erie Plastics, Inc. ("PEP") operates a custom injection molding business, manufacturing various plastic products. Deposition Transcript of James Witkowski (hereinafter "Witkowski Dep."), relevant excerpts from which are attached as Exhibit A, at 14:4-18 [1]

2. Beginning sometime in 2000 or 2001, PEP began manufacturing plastic DVD cases for an entity known as Nexpak. Witkowski Dep. at 15:24-16:6.

3. PEP used plastic resins, which Nexpak purchased from its supplier, BP Amoco, to manufacture the DVD cases. BP Amoco shipped the plastic resin to the Erie area by rail. PEP,

---

[1] James Witkowski was one of Port Erie's designated witnesses produced in response to CSX's 30(b)(6) deposition notices.

however, did not have a rail siding at or near its facility. Witkowski Dep. at 17:8-11; 17:24-18:3; 20:22-22:16  Answers to Interrogatories of Plaintiff CSX Transportation, Inc. Addressed to Defendant Port Erie Plastics, Inc., (hereinafter "PEP's Discovery Responses") relevant excerpts of which are attached hereto as Exhibit B, at 2

4. In order to receive the shipments of plastic resin, PEP engaged the common carrier services of Presque Isle Trucking ("PIT"). PIT would unload plastic resin from railcars which had arrived at the Mount Fort Terminal in Erie, Pennsylvania and load the resin into its trucks for shipment to the PEP facility  Upon arrival at the PEP facility, PIT would place the plastic resin into PEP's storage silos. Witkowski Dep at 22:3-13; and 36:16-19  Deposition transcript of Steve Bartosik[2] (hereinafter, "Bartosik Dep."), relevant excerpts from which are attached as Exhibit C at 8:8 – 18

5. CSX is a rail carrier which provides for the interstate transportation of freight, and which served as the delivering carrier for all of PEP's inbound shipments by rail which are at issue herein. Affidavit of John Underwood, attached as Exhibit D at ¶ 2 (hereinafter "Underwood Aff.").

6. At all relevant times, CSX had a tariff in effect which governed, *inter alia*, a consignee's duties with respect to handling inbound rail cars delivered from CSX, as well as the demurrage charges that applied for failure to handle rail cars in a timely fashion  The CSX tariff which includes these rules is identified as "CXST 8100 – Demurrage & Storage Provisions; Section VIII-C." ("CSXT 8100."). Underwood Aff. at ¶ 4; a copy of CSXT 8100 is attached to the Underwood Aff. as Exhibit "1" thereto, and is available for inspection over the internet at

---

[2] Steve Bartosik was PIT's general manager during the relevant time period. Bartosik Dep. at 9:3-10.

CSX's website.

7. Under CSXT 8100, CSX imposes a demurrage charge on a shipper of freight at origin or a consignee of freight at destination ("the customer") using a system of demurrage "credit days" and "debit days" which are added up on a monthly basis. If, at the end of any given month, a customer has accumulated more demurrage debit days than credit days, that customer is charged for the excess debits. Underwood Aff. at ¶ 5.

8. Under CSXT 8100, each railcar is allowed two (2) demurrage credit days. Upon arrival at the CSX yard, CSX issues a "constructive placement notice", *via* fax, notifying the customer that the railcar has arrived and is available for placement at the customer's facility for unloading. At that point in time, the customer is responsible for placing an order with CSX to have the railcar physically moved from the CSX yard to the customer's facility. Underwood Aff at ¶ 6

9. The customer begins incurring debit days at 12:01 am on the day after it receives the constructive placement notice. The customer incurs a debit day for each day that passes by after the constructive placement notice is issued. Underwood Aff. at ¶ 6.

10. In this instance, CSX delivered railcars with the plastic resin to the CSX yard in Erie. Underwood Aff. at ¶ 12.

11. Upon arrival of the rail cars at the CSX yard, CSX would issue a constructive placement notice to PIT, which had been designated by PEP as the party to whom such notice should be given. CSX would then await further instructions from PIT as to when it should move the rail car from the CSX yard to the Mount Fort Terminal for unloading. Bartosik Dep. at 17:19-25; 19:18-20:2. Affidavit of William Graham, a copy of which is attached hereto as Exhibit E.

3

12.     PIT ordered rail cars for unloading on behalf of PEP only upon the express instructions of PEP. The ordering of a car by PIT, as agent for PEP, would stop the accumulation of demurrage debits. Bartosik Dep. at 29:24-30:3 and 57:18-58:5. Witkowski Dep. at 23:22-24:3. Deposition of John T. Johnson[3] (hereinafter, "Johnson Dep.") relevant excerpts of which are attached hereto as Exhibit F, at 7:8 – 10:4. Underwood Aff. at ¶ 7. PEP's Discovery Responses at 2.

13.     Upon receipt of such an order from PIT on behalf of PEP, CSX would move the ordered rail cars from its yard to the track at the Mount Fort Terminal from which PIT loaded its trucks. Bartosik Dep. at 15:19-16:4; 19:18-20:2.

14.     The invoices for demurrage which are at issue in this case identify each railcar at issue as well as the date the car arrived, the date on which PIT, as agent for PEP, was "notified" of arrival at the CSX yard ("constructive placement"), the date on which the car was "ordered" by PIT, the date on which the car was actually "placed" at the Mount Fort facility ("actual placement"), and the date the car was "released" back to CSX after unloading. The invoices show that each car received two demurrage credit days. CSX's invoices also show how many debit days accumulated between "notification" or constructive placement and the ordering of the cars. Finally, the invoices provide monthly totals for the number of cars delivered during the month, the number of credit days, and the number of debit days accumulated. Copies of CSX's Demurrage bills are attached to the Underwood Aff. as Exhibit "2" thereto. Underwood Aff. at ¶ 14.

---

[3]  John T. Johnson was one of Port Erie's designated witnesses produced in response to CSX's 30(b)(6) deposition notices.

15.    CSX's demurrage tariff provides specifically that it "applies to all CSXT served customers and covers all railroad and private marked freight car(s) held for or by the customer(s)...". CSXT 8100; at Item 8000, p.2. More importantly, the tariff states that "[u]nless otherwise advised, in WRITING, that another party is willing to accept responsibility for demurrage, consignor at origin or consignee at destination will be responsible for the payment of demurrage charges." CSXT 8100, attached as Exhibit 1 to Underwood Aff., at Item 8070 (G), at 7.

16.    The bills of lading which controlled the shipments of railcars to PEP identify PEP as the consignee. Underwood Aff. at ¶¶ 11 and 12. See also Affidavit of Michael H. Francis, attached hereto as Exhibit G and Exhibit "B" attached thereto.

17.    CSX sent fifteen demurrage invoices to PEP which itemized the charges incurred by PEP for excess debit days over the credit days allowed for each car. The total amount of said charges is **$127,116.00**. Underwood Aff. at ¶¶ 14 and 15 and Exhibit "2" thereto.

18.    PEP has refused payment on all of CSX's demurrage invoices. Underwood Aff at ¶ 16.

                        Respectfully submitted,

                        /s/ Charles L. Howard
                        Charles L. Howard
                        Jeffrey D. Cohen
                        **JANSSEN & KEENAN P.C.**
                        One Commerce Square
                        2005 Market Street, Suite 2050
                        Philadelphia, PA 19103
                        (215) 665-8888
                        (215) 665-8887 (fax)
                        E-mail: choward@janssenkeenan.com

                        Attorneys for Plaintiff
Dated: February 23, 2006          CSX Transportation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2006, a copy of the foregoing Plaintiff CSX Transportation, Inc.'s Concise Statement of Material Facts in Support of Its Motion for Summary Judgment was filed electronically. Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**Richard J. Parks**, Esquire
MacDonald, Illig, Jones & Britton LLP
100 State Street
Suite 700
Erie, PA 16507-1459

By: */s/ Charles L. Howard*
Charles L. Howard *(pro hac vice)*
Jeffrey D. Cohen
JANSSEN & KEENAN P.C.
One Commerce Square
2005 Market Street, Suite 2050
Philadelphia, PA 19103
(215) 665-8888
(215) 665-8887 (fax)
E-mail: choward@janssenkeenan.com