# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC.<br>500 Water Street<br>Jacksonville, FL 32202-4423<br>　　　　　　Plaintiff | )<br>)<br>)<br>)<br>) | CIVIL ACTION |
| v. | )<br>) | CASE NO.: 05-139 Erie |
| PORT ERIE PLASTICS, INC.<br>909 Troupe Road<br>Harborcreek, PA 16421<br>　　　　　　Defendant | )<br>)<br>)<br>)<br>) | RELATED DOCUMENT NO. ____ |

## ANSWERS TO
## INTERROGATORIES OF PLAINTIFF CSX TRANSPORTATION, INC. ADDRESSED TO DEFENDANT PORT ERIE PLASTICS, INC.

Defendant, Port Erie Plastics, Inc., by and through its attorneys, MacDonald, Illig, Jones & Britton LLP, serves the following Answers to Interrogatories of Plaintiff CSX Transportation, Inc. Addressed to Defendant Port Erie Plastics, Inc.:

1. Identify each and every person supplying information in response to these interrogatories, as well as their position and business address.

**ANSWER:**

> John Johnson, President
> James Witkowski, Purchasing Manager
> Port Erie Plastics
> 909 Troupe Road
> Harborcreek, PA 16421

2. Set forth specifically and fully all facts which support the contention that Port Erie does not owe CSX for the demurrage charges sought in the Complaint, and include:
   a. the identify for each person having knowledge of each fact, circumstance, and/or items of information pertaining to non-payment by Port Erie to CSX; and



    b.       The identify of each document relating to, referring to, or supporting the non-payment by Port Erie to CSX (if Port Erie chooses to identify documents produced in response to CSX's Request for Production of Documents, please specifically identify responsive documents by Bates number).

<u>ANSWER</u>:

    a.       Same as above, and Brian Fahey, former Controller of Port Erie Plastics, currently Controller of Scott Enterprises, 8040 Peach Street, Erie, PA 16509, Telephone (814) 868-9500.

    b.       Port Erie was not a party to any shipping contract and did not receive any rail shipment at its business address. <u>Port Erie Plastics does not and did not have a rail side to offload any railcar shipped. Port Erie Plastics did receive shipments of NexPak resin from Presque Isle Trucking as directed by PEP</u> as the agent of NexPak based upon designated production runs by NexPak on its equipment located at Port Erie Plastics.

At all times, NexPak and its supplier of resin determined what products were shipped to whatever location. It is believed that NexPak and BP would designate the shipping terms and that all shipments were made prepaid from BP/Amoco locations as designated by BP for its sales to NexPak. Port Erie Plastics would receive information from NexPak that a train railcar was delivered to the Monfort Terminal controlled by Monfort Presque Isle Trucking. <u>Port Erie Plastics would direct Presque Isle Trucking to deliver NexPak's plastic by truck to its silo</u>, at which time, NexPak resin was placed in a Port Erie Plastics' silo at its business location. At the time, Port Erie Plastics had possession of several presses owned by NexPak and would operate those machines, in the ordinary course, as directed by NexPak. Port Erie Plastics would pay for the plastic resin as it was manufactured into the designated product for NexPak as a set-off against the agreed per piece molder's charge pursuant to the agreement between Port Erie Plastics and NexPak. At no time during the shipment or prior to its placement in the silos at Port Erie Plastics, did Port Erie Plastics obtain title to or have any interest in the resins until such time as the resin was designated for use on a NexPak contract. After the NexPak bankruptcy, one of the items dealt with within the bankruptcy was the purchase by Port Erie Plastics of the remaining resin from NexPak that was still in the Port Erie Plastics' silo. That agreement is enclosed in the documents produced.

3.     Specifically set forth the terms of any agreements Port Erie entered into which provide either that it is not responsible for demurrage charges or another entity is responsible for these charges.

2

ANSWER:

Port Erie Plastics was never a party to any shipping agreement between BP and NexPak. As produced in the document production, various agreements between NexPak and Port Erie Plastics existed but did not allow for any interest in plastic until after it was delivered at NexPak's direction with title retained by NexPak. In addition, please see the produced Stipulation between Port Erie Plastics and NexPak filed of record with the United States Bankruptcy Court for the Northern District of Ohio, related to the termination of the executory contract between Port Erie Plastics and NexPak, and which specifically provided for the purchase of the remaining resin by Port Erie Plastics in the silo of Port Erie Plastics but owned by NexPak as part of the termination of the executory contract between the parties by stipulation in the Bankruptcy Court.

5. Set forth specifically and fully each and every reason/defense for Port Erie's failure to pay CSX's demurrage invoices:

a. Identify each person having knowledge or each reason/defense why demurrage charges are not paid for each railcar (Identify railcar by number and dates of detention).

ANSWER:

Port Erie Plastics, Jim Witkowski, Brian E. Fahey, John Johnson, and BP Chemical's employee Jamie Oberland.

Port Erie Plastics never detained or selected railcars at any time. All control over the rail cars was determined by NexPak or BP in any manner with respect to any shipment made by BP/Amoco at the request of the purchaser of the resin NexPak Corporation. Any and all movement of the resins was directed solely at the discretion of NexPak or BP in consideration of its production runs of various products at Port Erie Plastics which generally consisted of the use of NexPak resin to produce NexPak product on NexPak equipment and molds in the possession of Port Erie Plastics using Port Erie Plastics' employees.

At no time did Port Erie Plastics, prior to resin being placed in the silo at Port Erie Plastics take title to the resin owned by NexPak. The ordinary course of business between the parties was a set-off for the purchase of the resin against the production charge due to Port Erie Plastics by NexPak for the production of the finished product as the product was being withdrawn from the silo and sent to the NexPak machines at Port Erie Plastics. The mutual debt between Port Erie Plastics and NexPak was generally handled by a set-off arrangement where the resin would be paid for as part of the payment by NexPak for the production charges due to Port Erie Plastics.

6. Identify every person you intend to call as an expert witness at the trial of this case, together with a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming such opinions; any exhibits to be used as a summary of or support for such opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding 10 years; the compensation paid, or to be paid, to such experts; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

### ANSWER:

No expert witness is contemplated at this time. Defendant does reserve the right to amend this response up to and including at the time of trial, based upon proceedings in discovery.

7  Identify each and every witness which you intend to call at trial.

### ANSWER:

Not determined at this time. Defendant does believe that representatives of Port Erie Plastics including, but not limited to, James Witkowski, Purchasing Manager; John Johnson, President; and Brian Fahey, former Controller, will be called as witnesses. In addition, Steve Bartosik, a retired employee of Presque Isle Trucking; Jeff Caldren, Materials Manager, Ronald Berry, Guyer, Debbie Kline, Buyer or Beth __?__, Accounts Payable, all at NexPak Corporation, 330 South Wood Street, East Canton, OH 44730; Barbara Jenkins, Senior Account Manager, CSX Transportation, 205 Reiman Street, Buffalo, NY 14212; and/or Sharon Jones, BP Chemicals, 150 West Warrenville Rd., Naperville, IL 60563, or Jamie Oberland of BP Chemicals in Cleveland, Ohio, all initially may be witnesses on behalf of the Defendant. NexPak may designate additional parties currently employed and/or representing NexPak with respect to the rejection of the executory contract between Port Erie Plastics and NexPak as represented by the Stipulation and Order of Court from the United States Bankruptcy Court for the Northern District of Ohio related to the NexPak Corporation bankruptcy, Case No. 04 - 63816.

8. Who does Port Erie believe is responsible for the demurrage charges which are the subject of this litigation and specifically why?

### ANSWER:

Port Erie Plastics believes that either BP Chemicals or NexPak Corporation were responsible for and held all interest in the plastic resins which NexPak purchased

4

from BP and/or Amoco respectively and had shipped to the Monfort Terminal at their direction. At all times relevant prior to the actual delivery of the plastic by truck to Port Erie Plastics' silo and even through the time of removal from the silo for production, Port Erie Plastics had no interest in the plastic resin purchased by NexPak and delivered at the direction of NexPak. The only Bills of Lading in possession of Defendant indicate BP was responsible for all invoices and BP continued to control shipments even after being placed at Monfort Terminal.

Port Erie Plastics was never a party to the shipping contract or subject to imposition of demurrage or any other shipping related charge for the resin, except for the actual local transportation by Presque Isle Trucking from the Monfort Terminal to Port Erie Plastics' silo. At all times NexPak diverted, removed and at all times controlled all movement of the railcars from the time of the departure from the resin supplier until such time as the railcar was actually placed in the Monfort Terminal. At all times relevant, NexPak maintained title to and all interest in, including the risk of loss, in the resin which it directed delivery and purchase from its suppliers. It is believed that BP also pulled full cars after they were placed at Monfort Terminal and diverted them to NexPak in Canton, Ohio and Atlanta, Georgia.

9.  Set forth the address, including street address and telephone number of all facilities which have the capacity to receive railcars owned and operated by Port Erie.

**ANSWER:**

None.

Respectfully submitted,

_Richard J. Parks_
Richard J. Parks
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7600

Attorneys for Defendant
Port Erie Plastics, Inc.

| CERTIFICATE OF SERVICE |
|---|
| I hereby certify that a copy of this document was served upon all other parties appearing of record by First-Class United States Mail sent on _____, 2005. |

926083

5

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSX TRANSPORTATION, INC. <br> 500 Water Street <br> Jacksonville, FL 32202-4423 <br>     Plaintiff <br><br> v. <br><br> PORT ERIE PLASTICS, INC. <br> 909 Troupe Road <br> Harborcreek, PA 16421 <br>     Defendant | ) CIVIL ACTION <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO.: 05-139 Erie <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## VERIFICATION

I, John Johnson, hereby depose and state that I am the President of Port Erie Plastics, Inc., defendant, herein and that the averments set forth in the foregoing responses to discovery requests are true and correct to the best of my knowledge, information and belief. This verification is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to intentional falsification to authorities.

                  _____
                  John Johnson

Dated: 2/21/06