IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSX TRANSPORTATION, INC.<br>500 Water Street<br>Jacksonville, FL 32202-4423<br><br>　　　　　　　　　　Plaintiff<br><br>　　v.<br><br>PORT ERIE PLASTICS, INC<br>909 Troupe Road<br>Harborcreek, PA 16421<br><br>　　　　　　　　　　Defendant. | CIVIL ACTION<br><br>CASE NO. 05-139 Erie |

**CSX TRANSPORTATION, INC.'S PRE-TRIAL STATEMENT
PURSUANT TO LOCAL RULE 16.1.4**

Pursuant to Local Rule 16.1.4 and the Case Management Order entered herein, Plaintiff, CSX Transportation, Inc. ("CSX"), hereby submits its pretrial statement.

**1. Factual Contentions**

CSX is a rail carrier providing freight transportation services in interstate and intrastate commerce. Defendant, Port Erie Plastics, Inc. ("PEP"), operates a custom injection molding business in Erie, Pennsylvania. Between April of 2002 and October of 2003, PEP received shipments of rail cars containing plastic resins for use in manufacturing DVD cases.

The shipments, for the most part, originated at a BP Amoco facility in Texas and were transported initially by the Union Pacific Railroad ("UP" or "the origin carrier") The rail cars were transferred to CSX at an interline terminal in East St. Louis, Missouri. The plastic resin moved under bills of lading which identified BP Amoco as the "shipper", PEP as the "consignee", and Nexpak as the "bill to" party, i.e., the party which

was responsible for payment of the freight bill. Upon arrival in Erie, Presque Isle Trucking ("PIT"), a motor common carrier acting in the capacity of PEP's designated agent, would unload the plastic resin from the rail cars into trucks and then transport the material to PEP for unloading into PEP's storage silos.

CSX could not deliver the rail cars directly to PEP because PEP did not have a rail siding at its facility. Instead, CSX would bring the rail cars to its yard in Erie. Upon arrival, CSX would fax a "constructive placement" notice to PIT, acting as PEP's designated agent, informing PIT of the arrival of the rail cars in Erie. PIT leased a rail siding at the Mount Fort Terminal in Erie and used that siding to service PEP as well as other business entities. The purpose of the constructive placement notice was to inform PEP, through its agent PIT, that rail cars consigned to PEP had arrived and could be moved to PIT's lease track at Mount Fort upon receipt of instructions to do so. PEP had designated PIT as its agent for receipt of constructive placement notices in December of 2001.

PIT would issue instructions to CSX to bring rail cars consigned to PEP to the Mount Fort Terminal when it received instructions from PEP that it needed more resin. Upon receiving such instructions from PEP, PIT would order cars to be brought from the CSX yard to Mount Fort Terminal. Upon arrival at Mount Fort, PIT would unload the material into its trucks for delivery to PEP. When delivering plastic resin to the PEP facility, PIT operated as a motor common carrier, charging PEP for its services.

During the relevant time period, CSX had a tariff in effect which governed, *inter alia*, a consignee's duties with respect to handling inbound rail cars delivered from CSX, as well as the demurrage charges that applied for failure to handle rail cars in a timely

2

fashion. CSX's tariff which includes these rules is identified as "CXST 8100 – Demurrage & Storage Provisions; Section VIII-C." ("CSXT 8100.").

Under CSXT 8100, CSX imposes a demurrage charge on a shipper of freight at origin or a consignee of freight at destination ("the customer") using a system of demurrage "credit days" and "debit days" which are added up on a monthly basis. If, at the end of any given month, a customer has accumulated more demurrage debit days than credit days, that customer is charged for the excess debits.

Under CSXT 8100, each railcar is allowed two (2) demurrage credit days. Upon arrival at the CSX yard, the conductor of the train notifies CSX that the railcars have, in fact, arrived at the yard. CSX then issues a constructive placement notice, *via* fax, notifying the customer that the railcar has arrived and is available for placement at the customer's facility for unloading. At that point in time, the customer is responsible for placing an order with CSX to have the railcar physically moved from the CSX yard to the customer's facility.

The customer begins incurring debit days at 12:01 am on the day after it receives the constructive placement notice. The customer incurs a debit day for each day that passes by after the constructive placement notice is issued. In this instance, the "demurrage clock" would stop running when PIT placed an order with CSX to bring rail cars from the CSX yard to PIT's lease track at Mount Fort. CSXT 8100 provides for a charge of $60.00 per debit day.

Beginning in May of 2002 and continuing through October of 2003, CSX sent fifteen separate invoices to PEP for the demurrage charges incurred by PEP during that time period. The total of the fifteen invoices is $127,116.00, which includes "liquidated

3

damages interest" also chargeable under CSX's tariff. PEP has refused to pay those invoices.

## 2. Legal Contentions

CSX contends that PEP is liable for the demurrage charges, which are made applicable by CSX's demurrage tariff, because, as the "consignee" of the rail cars at issue, it was a party to the contract of transportation. Federal court decisions as well as decisions by the United States Surface Transportation Board ("STB") have held that an entity designated as the consignee of a freight shipment is a party to the contract of transportation and is, therefore, liable for demurrage under a rail carrier's demurrage tariff.

CSX will also contend that PIT was acting as PEP's agent with respect to the receipt of constructive placement notices form CSX.

## 3. Damages

Attached as Exhibit A hereto is a spreadsheet which identifies each of the fifteen demurrage bills at issue. CSX will prove its damages through the testimony of a live witness who will explain the application of CSX's 8100 tariff to the rail cars at issue and the computation involved in preparing the invoices.

## 4. Witnesses

    a. John Underwood, CSX employee, Jacksonville, Florida
       Liability and damages

    b. William Graham, CSX employee, Jacksonville, Florida
       Liability

    c. Steve Bartosik, 3708 Guilford Drive, Erie, Pennsylvania
       Liability

    d. James Witkowski, Port Erie Plastics employee, Erie, Pennsylvania
       Liability

    e. John Johnson, President of Port Erie Plastics, Erie, Pennsylvania
       Liability

5. **Exhibits**

| Exhibit Number | Description | Identifier | Authenticity | Admissibility |
|---|---|---|---|---|
| 1 | CSXT 8100 Tariff | CSX00476 – 00490 | No | No |
| 2 | Damages Spreadsheet | CSX00211 | No | No |
| 3 | 15 Demurrage Invoices | CSX00001 – 00018 | No | No |
| 4 | EDI bills of lading produced by Union Pacific | UP00022 - 00087 | Yes | No |
| 5 | Waybills | CSX00024 – 00111 | No | No |
| 6 | Constructive placement notices | CSX00112 – 0172 | No | No |
| 7 | Notices of empty car release | CSX00235 - 00462 | Yes | No |
| 8 | Customer Profile Data | CSX00468 – 00471; Underwood Ex. 2 | No | No |
| 9 | Sample Presque Isle Trucking Inventory Report | Witkowski Dep. Ex. 7 | Yes | No |
| 10 | Exemplar constructive placement notice | Witkowski Dep. Ex. 8 | No | No |
| 12 | Rail Car Inventory | Witkowski Dep. Ex. 7 | Yes | No |
| 13 | Bill of lading | Witkowski Dep. Ex. 5 | No | No |
| 14 | 8 page fax from Johnson to Parks; 6/15/05 | Produced by PEP in initial disclosures | No | No |
| 15 | Answers to Interrogatories of Plaintiff CSX Addressed to Defendant Port Erie Plastics | Johnson Dep. Ex. 1 | Yes | No |

6

## 6. Use of Discovery Depositions

At this time, CSX anticipates that it may use the discovery deposition of Steve Bartosik, who was deposed in this matter on February 2, 2006 CSX hereby designates the following testimony from Mr. Bartosik's deposition, identified by page and line number:

p. 3, line 1 – p. 4, line 2
p. 8, lines 8 – 24
p. 9, lines 3 – 18
p. 10, line 4 – p. 16, line 13
p. 16, line 23 – p. 30, line 8
p. 31, line 5 – p. 32, line 15
p. 54, lines 10 – 23
p. 57, line 18 – p. 58, line 5

                          Respectfully submitted,

                          s/Charles L. Howard
                          Charles L. Howard
                          Jeffrey D Cohen
                          **JANSSEN KEENAN, P.C.**
                          One Commerce Square
                          2005 Market Street, Suite 2050
                          Philadelphia, PA 19103
                          (215) 665-8888
                          (215) 665-8887 (fax)

                          Attorneys for Plaintiff
                          CSX Transportation, Inc

Dated: February 23, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2006, a copy of the foregoing Plaintiff CSX Transportation, Inc.'s Pre-Trial Statement Pursuant to Local Rule 16.1.4 was filed electronically. Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**Richard J. Parks**, Esquire
MacDonald, Illig, Jones & Britton LLP
100 State Street
Suite 700
Erie, PA 16507-1459


By:   */s/ Charles L. Howard*
      Charles L. Howard *(pro hac vice)*
      Jeffrey D. Cohen
      JANSSEN & KEENAN P.C.
      One Commerce Square
      2005 Market Street, Suite 2050
      Philadelphia, PA 19103
      (215) 665-8888
      (215) 665-8887 (fax)
      E-mail: choward@janssenkeenan.com