IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC. | ) | CIVIL ACTION |
| 500 Water Street | ) | |
| Jacksonville, FL  32202-4423 | ) | |
|                 Plaintiff | ) | |
| | ) | |
|     v. | ) | CASE NO.:  05-139 Erie |
| | ) | |
| PORT ERIE PLASTICS, INC. | ) | |
| 909 Troupe Road | ) | |
| Harborcreek, PA  16421 | ) | RELATED DOCUMENT NO. |
| | ) | |
|                 Defendant | ) | ELECTRONICALLY FILED |

**DEFENDANT PORT ERIE  PLASTICS' PRETRIAL STATEMENT**

Pursuant to Local Rule 16.1.4. and the Case Management Order entered herein, defendant Port Erie Plastics, Inc., ("Port Erie"), hereby submits its pretrial statement.

**I.    SUMMARY OF MATERIAL FACTS**

CSX Transportation, Inc., ("CSX"), without any factual support asserts that Port Erie Plastics, Inc. is liable to CSX for demurrage charges relating to shipments of plastic resin that a Port Erie customer, NexPak, shipped to Erie during 2002 and 2003.

Port Erie is an injection molded plastics company that manufactures a wide variety of plastic products at its Harborcreek, Pennsylvania facility.  At all times relevant to the instant lawsuit, Port Erie was doing business with NexPak, a company that sells custom cases for, among other items, digital video discs (DVDs).  Throughout the duration of this business relationship, Port Erie molded DVD cases for NexPak.  On July 13, 2000, Port Erie and NexPak

entered into an agreement concerning the raw material polymer (plastic resin) needed to mold the cases. This agreement was memorialized in a jointly signed letter dated July 13, 2000.

By the terms of the Agreement between Port Erie and NexPak, NexPak would supply the plastic resin and other raw materials to Port Erie to enable Port Erie to manufacture cases ordered by NexPak. Specifically, under this agreement, NexPak retained ownership of the bulk plastic resin throughout its transport and storage. In February of 2002, NexPak sent two "blanket" purchase orders to Port Erie for the manufacture of DVD cases. The President of Port Erie has declared in a sworn statement that the July, 2000 Agreement regarding the inventory system for raw materials was effective with regard to these purchase orders at all times relevant to this cause of action.

It is believed that NexPak purchased the plastic resin from BP Amoco, who shipped the material primarily from a facility in Texas. It is believed that all of the shipments originated on the Union Pacific Railroad. At some point in transit, the plastic resin was transferred to the CSX rail system. CSX would then complete the rail transport to Erie, Pennsylvania. CSX wrongly claims that Port Erie is liable for demurrage charges that arose while the rail cars sat on CSX tracks after their arrival in Erie. CSX's basis for the assignment of this liability has shifted like the wind as proof contrary to their various theories has emerged during discovery. Presently, however, it appears that CSX is attempting to argue that mere designation on a bill of lading is sufficient to attach liability despite case law to the contrary. Their alternate argument appears to be a quasi-contractual theory, on the claim that a truck freight company who delivered NexPak's resin to Port Erie's Harborcreek facility was an agent of Port Erie that received a "benefit" from CSX's shipments, entitling CSX to an equitable remedy against Port Erie. This latest theory emerged (from the CSX marketing department) after discovery closed, when CSX realized that it

had, in fact, admitted that Port Erie never received notice of constructive placement as previously asserted by plaintiff.

Port Erie never entered into any contract with CSX regarding the shipment of NexPak's plastic resin, nor did it ever consent to being a consignee for these shipments. In fact, in spite of asserting that Port Erie is the contractual consignee, CSX now admits that it does not have any knowledge or evidence that Port Erie knew about or consented to any shipping contract with CSX or with any party concerning the rail cars that carried plastic resin to Erie, Pa: Neither can CSX assert that Port Erie was ever given notice of constructive placement once the shipments arrived in Erie.

The name "Port Erie Plastics" appears erroneously and inexplicably within a box on the form that is designated "Ship To (consignee)." Nonetheless, it is not clear from the form itself that Port Erie is actually designated as a consignee. Additionally, a number of unrefuted facts have emerged that will be focused upon at trial. First, the contract for the sale and shipment of the resin was between BP Amoco and NexPak. Second, Port Erie never signed a contract with CSX, or any other rail carrier, with respect to the subject resin shipments. BP Amoco and/or NexPak appear to have controlled all shipping of resin. Third, Port Erie never consented to a designation as consignee for the subject shipments. Fourth, Port Erie never knew it was even listed on the bill of lading. Finally, any reference to Port Erie in any of the shipping documents did not result from any communication between Port Erie and CSX or between Port Erie and any other party. In fact, BP Amoco was the originator of all such documents and responsible for all shipping charges.

In addition to the above facts, Port Erie never received notice of constructive placement for any of the subject rail shipments. Such notice, according to CSX's transportation tariff, is

3

necessary for liability to attach. CSX now admits that CSX did not send notice of constructive placement to Port Erie. CSX has, after discovery was closed, only now countered erroneously that the truck freight carrier that hauled NexPak's resin from the rail terminal to Port Erie's Harborcreek facility was an agent of Port Erie designated to receive such notice. Port Erie did not designate anyone as an agent for such purpose nor did Port Erie have authority to do so from NexPak. In fact, Port Erie remained, at all times relevant to this cause of action, unaware of any notice of constructive placement issued by CSX with regard to the plastic resin purchased by NexPak. Steve Bartosik, of Presque Isle Trucking, does not agree with CSX's contention of agency, and admits that he does not have any actual knowledge that Port Erie ever received, at any time, notice of constructive placement from CSX.

Even further, Port Erie has testified that awareness of rail shipments of plastic resin arose, in the normal course of business, from orders for final product placed by NexPak. Orders from NexPak would initiate communications between Port Erie and Presque Isle Trucking to arrange for the necessary resin to be trucked from the rail yard to Port Erie's Harborcreek facility. Importantly, NexPak held title to the resin in the rail cars, even during its truck shipment to and storage at Port Erie's Harborcreek facility. Therefore, in the normal course of business, Port Erie had Presque Isle Trucking haul resin to its facility only at the behest of NexPak.

Beyond the lack of contractual relationship between Port Erie and CSX, the underlying arrangements regarding the resin shipments in question lead to the conclusion that Port Erie was not even remotely involved in the rail shipments of the resin. As stated above, the letter between Port Erie and NexPak memorializing their resin inventory arrangements makes it clear that Port Erie did not own the resin being shipped by NexPak and BP Amoco. The rail shipment of the resin was structured by NexPak in such a way that it was outside of Port Erie's control, and even

their awareness. In fact, rail cars destined or delivered to Erie were called back, on more than one occasion, by NexPak and sent to other destinations in Canton, Ohio, and Atlanta Georgia. NexPak exercised full authority over the shipments even after they were in the Mont Fort Terminal. Port Erie was completely unaware of shipment details and had no control over shipments.

Port Erie's first knowledge that demurrage fees were accruing relative to the resin shipments was an invoice it received from CSX. Upon receiving the invoice, Port Erie disputed the bill and made inquiry with CSX explaining that it was not a party to any agreement with CSX regarding the NexPak shipments. Port Erie states that it repeatedly communicated to CSX that it was not a party to any transportation agreement with CSX, nor was the resin transported by CSX even owned by Port Erie. Accordingly, it could not be subject to any charges from CSX. CSX admits it did not investigate Port Erie's claim, has refused to acknowledge the legitimacy of Port Erie's claim, and has attempted to shift facts from one theory of liability to another, most recently after the close of discovery.

**2.    DEFENSES**

Presently, it appears that CSX is attempting to argue that mere designation on a bill of lading is sufficient to attach liability. Their alternate argument appears to be a quasi-contractual theory, on the claim that a truck shipper who delivered NexPak's resin to Port Erie's Harborcreek facility was an agent of Port Erie that received a "benefit" from CSX's shipments entitling CSX to an equitable remedy against Port Erie in this contract action.

Port Erie's defense is that Port Erie did not ever, in any manner, consent to the underlying transportation contract. It did not even know about the contract, and did not know that it was

5

even listed on a bill of lading.  Further, since Port Erie neither owned, nor had any control over, the plastic resin at any time relevant to the CSX rail shipments, it did not receive any benefit: either directly or indirectly.  Additionally, Port Erie did not authorize any agent to do or say anything that explicitly or impliedly consented to the contract.  Finally, Port Erie never, in any manner, received the requisite notice of constructive placement.  As a result, CSX cannot hold Port Erie liable.

**3.** **<u>DAMAGES</u>**

Port Erie does not assert any damages against CSX.

**4.** **<u>WITNESSES</u>**                                                                     Liability        Damages

       **Witnesses Likely to be Called**

| | | | Liability | Damages |
|---|---|---|---|---|
| a. | John Johnson<br>President<br>Port Erie Plastics, Inc.<br>909 Troupe Road<br>Harborcreek, Pennsylvania<br>(814) 899-7602 | | X | |
| b. | James Witkowski<br>Purchasing Manager<br>Port Erie Plastics, Inc.<br>909 Troupe Road<br>Harborcreek, PA<br>(814) 899-7602 | | X | |
| c. | Brian Fahey<br>Controller<br>Scott Enterprises<br>8040 Peach St. | | X | |

        Erie, PA
        (814) 868-9500

d.    John Underwood    X
        CSX employee
        CSX Transportation, Inc.
        Jacksonville, FLA

**Witness that May be Called.**

e.    Steve Bartosik    X
        3708 Guilford Drive
        Erie, PA
        (814) 838-1865

    Deposition transcript may be utilized for this witness.

        P. 18, L. 10-24.
        P. 20, L. 15-19.
        P. 21, L. 11-16.
        P. 37, L. 2-23.
        P. 38, L. 19-25.
        P. 47, L. 12-21.
        P. 48, L. 1-25.
        P. 49, L. 1-11.
        p. 50, L. 5-25.
        p. 51, L. 18-21.
        p. 53, L. 24-25.
        p. 62. L. 18-20.

**5.    EXHIBITS**

**Exhibits Likely to be Used.**

Ex. A.    July 13, 2000 Letter from Witkowski to NexPak.
Ex. B.    February 7, 2002, NexPak Blanket Purchase Agreement.
Ex. C.    Straight Bill of Lading.
Ex. D.    CSXT Tariff, Demurrage Definitions, pp. 11, 13.

**Exhibits That May be Used.**

Ex. E.	Exemplar UP Waybill
Ex. F.	Exemplar CSX Waybill

Respectfully submitted,

     *s:/ Richard J. Parks*
Richard J. Parks
Pa. Bar I.D. No. 40477
Scott T. Stroupe
Pa. Bar I.D. No. 89496
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7754
FAX (814) 454-4647
rparks@mijb.com

Attorneys for defendant
 Port Erie Plastics, Inc.

943056

**CERTIFICATE OF SERVICE**

I hereby certify that copies of the foregoing Pre-Trial Statement on Behalf of Defendant Port Erie Plastics, Inc. was served upon the following attorney of record, via electronic transmission as follows, this 13th day of March, 2006:

Charles L. Howard, Esq.          choward@janssenkeenan.com

*s:/ Richard J. Parks*
Richard J. Parks, Esq.