IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSX TRANSPORTATION, INC. 500 Water Street Jacksonville, FL 32202-4423                    Plaintiff v. PORT ERIE PLASTICS, INC 909 Troupe Road Harborcreek, PA 16421                    Defendant. | CIVIL ACTION CASE NO 05-139 Erie |

## CSX TRANSPORTATION, INC.'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT PORT ERIE PLASTIC INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, CSX Transportation, Inc. ("CSX"), hereby submits this Memorandum of Law in response to Defendant Port Erie Plastics, Inc's ("PEP") Brief in Support of its Motion for Summary Judgment (hereinafter, "the Opening Brief") [1]

### I.  INTRODUCTION

PEP seeks summary judgment dismissing CSX's demurrage claims on four grounds, none of which is supported by either the applicable law or by the facts which have been developed in this matter. PEP first argues that it was not a party to the "underlying Contract", and is, therefore, not liable for demurrage. Opening Brief, at 12. PEP's argument rests on case law which is clearly distinguishable from the facts of this case. Moreover, PEP has not provided any legal support for the proposition that a consignee of a shipment of goods cannot be liable for demurrage unless it had contracted

---

[1] CSX has also filed a Motion for Summary Judgment in this matter along with a brief and a Concise Statement of Material Facts in Support of its motion. Those filings appear on the docket as Docket Entries nos 20, 21 and 22 respectively

to take on that liability.

PEP then argues that it was "erroneously" designated as the "consignee" on the bills of lading which governed the shipment of plastic resin to its facility in Erie, PA. Opening Brief, at 14. PEP, however, has not identified any evidence which even remotely suggests that the designation of PEP as the consignee on the relevant bills of lading was done in error.

PEP next argues that it never received notice of constructive placement of the rail car loads of plastic resin. PEP's argument ignores the undisputed facts of this case which establish that it did, in fact, receive such notice through its agent which had been designated by PEP to receive such notice.

Finally, PEP argues that because the shipper of the plastic resin had been designated as "the payor" of the freight bills, it is therefore liable for demurrage. PEP's argument is based on a gross misunderstanding of the difference between freight charges and demurrage charges. Accordingly, this Court must deny PEP's motion for summary judgment.

## II.    RESPONSE TO ALLEGED "BACKGROUND" FACTS

PEP uses eight pages of its Opening Brief to apprise the Court of alleged facts which it characterizes as "Background." Much of the "background" information is simply a regurgitation of PEP's Concise Statement of Facts (Docket Entry No. 18), which it filed in support of its motion and to which CSX has filed a response. Unfortunately, and as noted in the aforementioned response by CSX, many of the so-called "background" facts are either immaterial to this matter or simply incorrect, or both.

In the "Background" section of its Opening Brief", PEP provides this Court with

2

an exhaustive explanation of the business relationship between PEP and an entity known as NexPak, which allegedly arranged for the shipment of plastic resin to PEP. The thrust of this explanation appears to be that NexPak "owned" the resin while it was in transit from the shipper until it was unloaded into PEP's storage silos. This "background" information would certainly be of interest if ownership of the goods being transported was an issue material to this case. This case, however, requires a determination of whether PEP is liable to CSX for demurrage. In any event, the Supreme Court of the United States has already determined that ownership of the goods is immaterial to the determination of whether a consignee is liable for freight charges when the consignee has accepted the goods from the carrier.[2]

PEP also mischaracterizes the record developed in this case when it says that CSX "points to a bill of lading in which 'Port Erie Plastics' appears erroneously and inexplicably with a box on the form..." Opening Brief, at 4. Later on in its Opening Brief, PEP states that it was CSX which "produced" the aforementioned "bill of lading."[3] Opening Brief at 15. First of all, the bill of lading in question was not produced by CSX. CSX produced 475 pages of documents in this case, all of which were Bates-labeled by CSX's counsel. The document in question has no Bates-label on it. None of the documents produced by PEP in this matter were Bates labeled.

In fact, it was PEP which introduced the bill of lading in question into the record when it produced it in response to CSX's document requests. It is part of an eight page

---

[2] See discussion of Pittsburgh, Cincinnati, Chicago & St. Louis Ry. V. Fink, 250 U.S. 577, 40 S.CT. 27 (1919), *infra*, at 8 – 10.
[3] The "bill of lading" to which PEP refers is attached as Exhibit I to its Motion for Summary Judgment (Docket Entry no. 17).

fax sent from "Johnson to Parks"[4] in June of 2005, a copy of which is attached hereto as Exhibit A.

More importantly, however, is the fact that the bill of lading in question is completely irrelevant to this matter. It does not involve a rail car for which CSX seeks demurrage. In fact, it is dated June 4, 2004, which is more than a year *after* CSX sent the last demurrage bill at issue herein to PEP. It would appear that PEP is attempting to mislead the Court.

CSX did subpoena copies of the EDI bills of lading for the shipments which are at issue in this case and which were in Union Pacific's possession.[5] Those bills of lading all clearly identify PEP as the sole, named consignee of the shipments of plastic resin at issue in this case. CSX forwarded Union Pacific's response to its subpoena *duces tecum* to PEP'S counsel on November 15, 2005.[6] PEP has been in possession of the aforementioned bills of lading since November 2005 and has not developed a shred of evidence to support its claim that PEP "erroneously and inexplicably" appears as the consignee on those documents. In fact, PEP has stipulated to the authenticity of EDI bills of lading produced by Union Pacific.[7] PEP cannot escape from the fact that it is named repeatedly as the consignee on the bills of lading which governed the shipments at issue in this case by simply advancing the unsupported allegation that an error was made.

---

[4] "Johnson" is presumably John T. Johnson, PEP's President. "Parks" is Richard Parks, who is PEP's counsel of record in this matter.
[5] "EDI bills of lading" are explained in both the affidavits of John Underwood and Michael Francis, attached as Exhibits D and G respectively to CSX's Concise Statement of Material Facts in support of its Motion for Summary Judgment (Docket Entry no. 22).
[6] See transmittal letter from CSX's counsel to PEP's counsel, attached hereto as Exhibit B.
[7] See letter from PEP's counsel to CSX's counsel dated February 23, 2006 and email exchanged between PEP's and CSX's counsel, dated January 17 and 19, 2006, all of which is attached hereto as Exhibit C.

PEP also misstates the record when it argues that "Port Erie did not receive <u>any</u> notice of constructive placement relevant to the instant claim", and that "CSX has failed to produce any admissible evidence that raises even a reasonable inference that such notice actually (legally or factually) reached Port Erie." Opening Brief, at 6 (emphasis in original). CSX concedes that it cannot show that PEP ever <u>directly</u> received a constructive placement notice from CSX. PEP is wrong, however, when it argues that PEP never received a constructive placement notice from CSX concerning the rail cars at issue.

PEP's disclosed agent, Presque Isle Trucking ("PIT"), received such notices for each and every rail car at issue. The fact of PIT's status as PEP's agent is generally discussed in CSX's brief in support of its motion for summary judgment (Docket Entry no. 21). CSX has substantiated PIT's status as PEP's designated agent for purposes of receiving constructive placement notices in CSX's Concise Statement of Material Facts at ¶¶ 4, 11 and 12 (Docket Entry No. 22) and in the Affidavit of William Graham, attached as Exhibit E thereto.

PEP certainly should not be surprised that CSX has taken the position that PEP designated PIT as its agent for the purpose of receiving constructive placement notices. When PEP noticed the 30(b)(6) deposition of a CSX corporate designee, it identified "[t]he designation of Presque Isle Trucking as the recipient of the notice of constructive placement for shipments subject in the instant lawsuit" as one of the topics it would pursue at the deposition. PEP's counsel questioned John Underwood, CSX's 30(b)(6) designee, at length about that topic.

Although Mr. Underwood had no personal knowledge of the facts surrounding

5

PEP's designation of PIT as its agent for receipt of constructive placement notices, in preparation for his deposition, Mr. Underwood had researched the company's knowledge with respect to that issue.[8] Mr. Underwood responded fully to all of counsel's questions regarding PEP's designation of PIT as its agent for receipt of constructive placement notices. See excerpts from deposition testimony of John Underwood, ("Underwood Dep.") attached hereto as Exhibit D, at 16:11 – 21:2; and 24:6 – 27:20. At no time did PEP's counsel object to CSX's designation of Mr. Underwood to testify about CSX's corporate knowledge of any of the topics on the PEP 30(b)(6) notice.

### III. ARGUMENT

#### A. PEP Has Failed to Identify Any Legal Authority Which Would Enable It to Escape Liability for the Demurrage Charges at Issue.

PEP relies on the decision of the United States Court of Appeals for the Third Circuit in Union Pacific Railroad Co. v. Ametek, Inc., 104 F.3d 558 (3d Cir. 1997) to support its argument that it was "not a party to the underlying contract." PEP's reliance on Ametek is misplaced inasmuch as the Third Circuit addressed issues of both fact and law which are not present in the instant case.

Ametek involved an attempt by several railroads to assess demurrage charges on Ametek, an entity which had not been designated as either the consignor or the consignee of the shipped goods on the relevant bills of lading. Ametek, 104 F.3d at 559. In fact,

---

[8] See United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C.1996)("If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. Thus the duty to present and prepare a 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.")(citations omitted).

6

Ametek had been the disclosed agent for those entities which had been designated as the consignee or the consignor for those shipments. Id. at 562. While PEP is not a disclosed agent, but rather the sole consignee named on all bills of lading, the Third Circuit did quote the definition of demurrage from Black's Law Dictionary as "a charge exacted by a carrier from a shipper *or* a consignee on account of a failure to load or unload cars within the specified time prescribed by the applicable tariffs...". Ametek, 104 F.3d at 559, n.2.

Here, PEP is not the agent, disclosed or otherwise, of the consignee or consignor, for the simple reason that it was identified as the consignee on the bills of lading which governed the shipments of plastic resin to its facility. PEP does argue that it was acting as NexPak's agent. NexPak, however, was neither the consignor nor the consignee on any of the shipments at issue. To the extent that a principal-agent relationship may have existed between PEP and NexPak, such a relationship is simply not relevant to whether PEP is liable to CSX for demurrage charges.

PEP further argues that "it is quite reasonable to conclude, as in Ametek, that the agent Port Erie cannot be held liable for demurrage charges because it was not a party to a transportation contract." Opening Brief, at 14. The Third Circuit, however, did not "conclude" that a consignee, such as PEP, could not be held liable for demurrage charges. It instead held that Ametek, as a disclosed agent of the consignee on the bill of lading could not be a party to the transportation contract and, therefore, could not be liable for demurrage charges. Id. at 563. In light of the significant and substantial factual differences between Ametek, based on disclosed agency, and the instant case, the Third Circuit's holding in Ametek should have no bearing on the determination of whether PEP

7

is liable to CSX for demurrage.[9]

The Ametek decision provides PEP no support in its attempt to evade its responsibility for demurrage charges in the instant case. CSX has already elaborated on why PEP's status as the sole consignee of the shipments at issue renders it liable to CSX for the demurrage charges at issue in its brief in support of summary judgment (Docket Entry No. 21, at 6 – 9), which CSX incorporates as if fully set forth herein.

### B. PEP Was the Consignee on All of the Shipments at Issue.

Apparently conceding that it was, in fact, the designated consignee of the shipments at issue, PEP argues that "the mere fact that a party was listed on a bill of lading does not, of itself, create a contract." Opening Brief, at 15. PEP cites to two decisions from the Seventh Circuit and one from a Louisiana appellate court in support of this argument. Not surprisingly, none of the cases on which PEP relies addressed the factual issues present in the instant case. Before distinguishing each of the cases cited by PEP, however, an explanation of the significance of both PEP's designation on the bills of lading as consignee and its acceptance of the goods upon their tender by CSX is in order.

The Supreme Court of the United States addressed and rejected the key arguments advanced here by PEP when it decided Pittsburgh, Cincinnati, Chicago & St. Louis Ry. V. Fink, 250 U.S. 577, 40 S CT 27 (1919). In Fink, the defendant was the consignee of a shipment of goods. Upon receipt of the goods, the defendant paid the freight charges. Unfortunately, the carrier had collected only half of its full tariff rate and eventually sued

---

[9] The Third Circuit also noted that Ametek "did not receive, process, or distribute its own materials,..." Id. at 560. Here, PEP did process "its own material" upon its receipt. See Affidavit of John T. Johnson, attached as Exhibit A to PEP's motion for summary judgment (Docket Entry No. 17), at ¶¶ 3 and 4.

8

the defendant for the other half.

Although the defendant had paid the freight charges upon receipt of the goods, there had been no agreement with the consignor of the goods that the defendant was to pay the freight. Fink, 40 S.Ct. at 27. The Court noted "the weight of authority seems to be that the consignee is prima facie liable for the payment of freight charges *when he accepts the goods from the carrier.*" Fink, 40 S.Ct. at 27 (emphasis added).

The defendant also argued, as does PEP, that he should not be liable for the full tariff rate because he did not become the owner of the goods until after they had been delivered to him. The Court rejected that argument, stating that "[t]here is no proof that such agreement was known to the carrier, *nor could that fact lessen the obligation of the consignee to pay the legal tariff rate when he accepted the goods.*" Id. at 28 (emphasis added). The Court held that the defendant was liable to the carrier for its full tariff rate.

In Wheaton Van Lines, Inc. v. Gahagan, 669 A.2d 745 (Me. 1996), a motor carrier sued the receiver of goods for its freight rates when it could not collect from the shipper who had been identified on the bill of lading as the party responsible for the freight charges. The defendant's employer's name had appeared on the bill of lading as both the shipper and the consignee. The defendant's name also appeared in parentheses on the bill of lading as both the shipper and the consignee. It was undisputed that the carrier had been directed to deliver the goods to the defendant, that it did so, and that the defendant accepted the goods. The Supreme Court of Maine, relying on Fink, stated that, regardless of whether a party has actually been designated as the consignee on the bill of lading, if that party accepts goods when tendered by the carrier, it must be treated as the consignee for purposes of liability for freight transportation charges. Gahagan, 669 A.2d

9

at 748 – 49. The Court held that the defendant was liable for the freight charges.

Although both <u>Fink</u> and <u>Gahagan</u> involved claims for freight transportation charges and not for demurrage charges,[10] the legal principle which guided those decisions is applicable to the case at bar, i.e., a party which conducts itself as a consignee is, in fact, the consignee. Here, PEP not only appeared on the bills of lading as the sole consignee, but it also conducted itself as the consignee by accepting the goods, through its agent PIT, when tendered by CSX. Moreover, and as noted by the Supreme Court in <u>Fink</u>, PEP's acceptance of the goods negates any argument that its lack of ownership of those goods while in transit affected its liability for demurrage.

As noted above, PEP relies on several cases in support of its argument that the "mere fact" that it appeared on a bill of lading does not render it liable for demurrage. PEP's reliance on those cases, however, is misplaced because all of the cases on which PEP relies are easily distinguishable from the facts at bar.

PEP cites to a decision from the Louisiana Court of Appeals in which an entity which had been named as the shipper on the bill of lading was sued for demurrage. <u>City of New Orleans v. Rapid Truck Leasing, Inc.</u>, 348 So. 2d 1299 (La. Appl 1977). The carrier in <u>Rapid Truck</u> had designated the defendant on the relevant waybill as the "shipper." The consignor of the shipment had put the defendant's name on the bill of lading as the "shipper." The defendant's only role in the entire transaction, however, had been to load tractors physically onto the carrier's rail car pursuant to a contract it had with the consignor. The Court noted that the fact that the defendant's name was erroneously put on both the bill of lading and the waybill did not provide a basis for a

---

[10] The distinction between the two types of charges is discussed more fully, *infra*, at 14 – 15.

freight contract between the defendant and plaintiff. City of New Orleans, 348 So. 2d at 1301.

In the instant case, PEP has not produced any evidence of record that it erroneously appeared on the bills of lading. Had PEP not been the party accepting the goods upon their arrival in Erie, then perhaps an argument could be made that PEP appeared on the bills of lading as the result of an error. PEP's acceptance of the goods, however, effectively refutes that argument. Unless and until PEP can substantiate its contention that its appearance on the bills of lading resulted from error, Rapid Trucking should have no bearing on the determination of PEP's liability for demurrage charges.

PEP also relies on *dicta* from two Seventh Circuit decisions; one involving claims for switching charges, the other involving claims for demurrage charges. In Evans Products, Co., et al v. I.C.C. et al, 729 F.2d 1107 (7th Cir. 1984), the Court set aside an I.C.C. decision which had approved the application of tariffs which assessed switching charges against repair facilities and "others tangentially involved in the shipment [of freight], such as 'warehousemen, pier operators, brokers, steamship agencies and others similarly situated.'" Evans Products, 729 F.2d at 1113 (citations omitted). The Court, citing Rapid Truck, also noted that "[n]o liability exists merely on account of being named in the bill of lading." Id.

Here, PEP is more than just "tangentially involved in the shipment" of freight. Its involvement was more than simply "being named in the bill of lading." It was the sole party entitled to receive the shipments under the bill of lading. But more importantly, it was <u>the</u> party which actually accepted the goods upon their arrival in Erie.

Finally, PEP curiously cites to the Seventh Circuit's decision in Illinois Central

11

Railroad Co. v. South-Tec Dev. Warehouse, Inc., 337 F.3d 813 (7th Cir. 2003). The trial court had found the defendant liable for demurrage without making a finding as to whether it was, in fact, the consignee of the shipments at issue. On appeal, the Seventh Circuit determined that the defendant would be liable for demurrage charges if it were either "a consignee *or* if it contractually assumed responsibility for demurrage charges." South-Tec, 337 F.3d at 820 (citations omitted)(emphasis added). The Court reversed the trial court and remanded the case with instructions to the trial court to determine who was the legal consignee.

Here, PEP was designated as the consignee on all of the relevant bills of lading <u>and</u> conducted itself as the consignee for all the shipments in question. Using the South-Tec decision as guidance, there is no need to determine whether PEP had contractually assumed liability for demurrage. Its status and conduct as the consignee is sufficient to establish its liability for demurrage charges in this case.[11]

### C. **CSX Provided Notice of Constructive Placement to PEP's Designated Agent, PIT.**

PEP is simply wrong (or is attempting to distort and manipulate the facts) when it argues that it never received notice of constructive placement of the rail cars at issue. As William Graham attested in his sworn affidavit, PEP had designated PIT as its agent for receipt of such notice at about the same time that PEP began receiving shipments of plastic resin and months before any demurrage bill issued from CSX. Affidavit of William Graham, attached as Exhibit E to CSX's Concise Statement of Material Facts

---

[11] PEP appears to attach some significance to the fact that NexPak appears on the bill of lading as the "purchaser of the resin." Opening Brief, at 16, n.13. As previously discussed, the bill of lading to which PEP refers is not relevant to this case. Moreover, the EDI bills of lading produced by Union Pacific in response to CSX's subpoena *duces tecum*, which are relevant, make no reference at all to NexPak.

(Docket Entry no. 22). Steve Bartosik testified that PIT received constructive placement notices for the plastic resin consigned to PEP on a daily basis. Mr. Bartosik also testified that PIT prepared an inventory of the railcars which were available for unloading and sent that inventory to PEP every Friday. Deposition of Steve Bartosik, ("Bartosik Dep.") relevant excerpts from which are attached hereto at Exhibt E, at 19:3 – 21:24. The weekly inventory would inform PEP of when rail cars had been constructively placed. Id. Finally, there is no dispute that PIT delivered resin which it unloaded from rail cars to PEP only upon receiving instructions to do so from PEP. See citations to the record at ¶ 12 of CSX's Concise Statement of Material Facts (Docket Entry no. 22).

CSX anticipates that PEP will attempt to rebut Mr. Graham's sworn statement with an opposing affidavit which denies that PEP ever designated PIT as its agent for receipt of constructive placement notices. The problem with such a denial is that it would fly in the face of the record developed in this case.

There is no evidence that NexPak told CSX to notify PIT when rail cars with plastic resin had arrived in Erie. In fact, John Underwood, CSX's 30(b)(6) designee, testified that CSX had no record of any contact whatsoever with NexPak. Underwood Dep at 14:25 – 15: 7 and 32: 8 – 15.

It is clear that NexPak certainly did not tell PIT that it was to accept such notices in light of Steve Bartosik's testimony that, during the relevant time period, PIT did not have any communications with NexPak. Bartoskik Dep. at 30: 4 – 8.

CSX would not have known to contact PIT because the only information it would have had concerning the intended receiver of the resin would have been on the EDI bills of lading it was receiving from Union Pacific, the origin carrier. PIT is simply not

13

identified on those bills of lading.

So, if PEP did not designate PIT as its agent for receipt of constructive placement notices, who did? The answer is that the instruction to CSX to notify PIT of constructive placement had to have come from PEP, which is entirely consistent with Mr. Graham's description of the creation of PEP's customer profile.

### D. The Responsibility for Payment of Freight Transportation Charges Is Immaterial to the Consideration of Responsibility for Demurrage Charges.

PEP makes the patently specious argument that, because BP Amoco, the shipper of the plastic resin consigned to PEP, is identified on the bills of lading as the party responsible for the shipping charges, BP Amoco is responsible for the demurrage charges. Opening Brief at 18. In order to make such an absurd argument, PEP has to ignore virtually all of the case law on which it relies as well as case law which specifically addresses the difference between line-haul charges and incidental charges such as demurrage.

The Supreme Court of the United States has long recognized that charges for the transportation of freight have nothing to do with charges for demurrage. In I.C.C. v. Oregon Pacific Industries, Inc. et al., 420 U.S. 184, 95 S. Ct. 909 (1975), the Court said that the I.C.C.'s authority to regulate "car service" by imposing or enforcing demurrage charges "extends to the 'use' of cars and not to a 'transportation service', . . ." Oregon Pacific, 95 S. Ct. at 913. The Court also said that demurrage charges "are an integral part of the established rules and regulations relating to the use and movement of cars. From the beginning they have been sustained as rules and regulations *They could not have been sustained as carrier charges* or *as penalties.*" Id. at 914, n.7, quoting Iversen v.

14

United States, 63 F.Supp. 1001 (D.D.C. 1946), aff'd *per curiam,* 327 U.S. 767 (emphasis added). See also Delaware and Hudson Ry. Co., Inc., v. Offset Paperback Manufacturers, Inc., et al., 126 F. 3d 426, 428 (2d Cir. 1997)("The courts and the ICC have consistently recognized a distinction between transport, or freight rates, and demurrage rates.")(citations omitted).

Here, BP Amoco was the party to whom invoices for the freight transportation services provided by the carriers were to be sent. The fact that it was responsible for payment of such charges has absolutely no bearing on the determination of who is responsible for rail car demurrage charges at destination. BP Amoco had no role whatsoever in the delay in ordering cars at destination. Those delays were caused by PEP, the consignee of the shipments. Thus, PEP and not BP Amoco is the party responsible for CSX's demurrage charges.[12]

PEP also cites to the U.S. Surface Transportation Board's ("STB") decision in the R. Franklin Unger matter in support of its argument that BP Amoco, which was the party responsible for the freight transportation charges, should be responsible for CSX's demurrage charges. CSX would initially note that it has already addressed the Unger decision in its brief in support of its motion for summary judgment (Docket Entry no. 21) at 7 – 8, which it incorporates as if fully set forth herein. PEP's reliance on Unger is wholly misplaced and reflects a complete misunderstanding of the import of that decision.

First, in Unger, it was the consignee which was responsible for the payment of the

---

[12] BP Amoco could only be responsible for demurrage if it had detained empty rail cars in Texas during the loading process. Such charges, however, would have been due and owing to the origin carrier, Union Pacific.

15

freight charges, and its agreement to pay for those charges was with the destination carrier. The STB, however, held that the shipper was responsible to the origin carrier for its own accrued demurrage charges. In other words, the <u>Unger</u> decision directly contradicts PEP's position that the party responsible for the freight charges must also be responsible for any demurrage charges.

PEP also erroneously asserts that the STB said that "[d]emurrage charges . . . are generally assessed against the shipper that unduly retains the cars", apparently believing that <u>Unger</u> stands for the proposition that only shippers can be liable for demurrage. <u>Unger</u> involved a claim for demurrage accruing at origin against a shipper, so it should not come as any surprise that the STB would make reference to the "shipper" as the party against whom demurrage charges could be assessed. To argue that only shippers can be liable for demurrage flies in the face of cases such as <u>Ametek</u> and <u>South-Tec</u> (and countless others), all of which acknowledge that demurrage is a charge which can be assessed against a consignor (shipper) at origin or a consignee at destination.

## IV. CONCLUSION

PEP has not advanced a single legal theory which could support summary judgment in its favor and against CSX. As the clearly designated sole consignee on every bill of lading for every rail car containing plastic resin at issue in this lawsuit, PEP is liable for demurrage charges which accrued pursuant to CSX's demurrage tariff. Accordingly, PEP's motion for summary judgment must be denied.

                                      Respectfully submitted

                                      /s/ Charles L Howard
                                      Charles L. Howard
                                      Jeffrey D. Cohen
                                      **JANSSEN & KEENAN P.C.**
                                      One Commerce Square
                                      2005 Market Street, Suite 2050
                                      Philadelphia, PA 19103
                                      (215) 665-8888
                                      (215) 665-8887 (fax)
                                      E-mail: choward@janssenkeenan.com

                                      Attorneys for Plaintiff
                                      CSX Transportation, Inc.

Dated: March 13, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2006, a copy of the foregoing **CSX TRANSPORTATION, INC.'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT PORT ERIE PLASTIC INC.'S MOTION FOR SUMMARY JUDGMENT** was filed electronically. Notice of this filing will be sent to the following counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**Richard J. Parks**, Esquire
MacDonald, Illig, Jones & Britton LLP
100 State Street
Suite 700
Erie, PA 16507-1459

By:  **/s/ Charles L. Howard**
Charles L. Howard *(pro hac vice)*
Jeffrey D. Cohen
JANSSEN & KEENAN P.C.
One Commerce Square
2005 Market Street, Suite 2050
Philadelphia, PA 19103
(215) 665-8888
(215) 665-8887 (fax)
E-mail: choward@janssenkeenan.com