IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CSX TRANSPORTATION, INC.<br>500 Water Street<br>Jacksonville, FL 32202-4423 : | CIVIL ACTION |
| Plaintiff : | CASE NO. 05-139 Erie |
| v. : | |
| PORT ERIE PLASTICS, INC.<br>909 Troupe Road<br>Harborcreek, PA 16421 : | |
| Defendant. : | |

**CSX TRANSPORTATION, INC.'S MEMORANDUM OF LAW
IN REPY TO DEFENDANT PORT ERIE PLASTIC'S BRIEF IN OPPOSITION
TO CSX'S MOTION FOR SUMMARY JUDGMENT**

Arguments in response to virtually all of the positions taken by defendant, Port Erie Plastic ("PEP"), in its brief in opposition to CSX Transportation, Inc.'s ("CSX") motion for summary judgment can be found in CSX's brief filed in opposition to PEP's motion for summary judgment (Docket Entry No. 31). CSX, however, is compelled to reply to PEP's misplaced reliance on Middle Atlantic Conference et al v. U.S.A. and the Interstate Commerce Commission, 353 F. Supp. 1109 (D.D.C. 1972) and to "footnote 6" of PEP's opposition brief.

**PEP's Has Yet to Cite to Any Authority Which Would Support Its Defense to CSX's Demurrage Claims.**

As is true with every single case on which PEP has relied in its attempt to evade responsibility for the demurrage charges at issue, the Court in Middle Atlantic did not address the question of whether an entity which both appeared as the consignee on the bill of lading and acted as the consignee of the freight by accepting it upon delivery can

be held responsible for demurrage. That simply was not the question in front of the Court.

In fact, the Court on more than one occasion indicated that it was addressing just the opposite situation, i.e., whether demurrage can be imposed upon parties who are not named in the bills of lading as consignors or consignees.

> This formulation of the issue by the plaintiffs is a clear admission that the carriers are attempting to *impose* liability upon parties who are not named in the bills of lading as consignors or consignees

Middle Atlantic, 353 F. Supp. at 1113 (emphasis in original).

> ". the law seems to be well settled that the party to whom a shipment is consigned is the legal consignee and not the party in whose care the goods are shipped." There is no claim here that the warehouseman appears as a consignee on the bill of lading.

Id., at 1118 n 25, quoting Smokeless Fuel Co. v. Norfolk & Western Ry., 85 I.C.C. 395, 401 (1923).

> The statement [from Michie on Carriers] cannot be interpreted, as the plaintiff-intervenor contends, to mean that demurrage charges may be assessed in the absence of contract against persons other than those named in bills of lading as consignors or consignees of shipments. . None of the cited cases decide that a warehouseman or agent who is *not* named in a bill of lading as consignor or consignee may be held liable for the payment of detention charges.

Id., at 1119 (emphasis in original).

> It is thus our opinion that plaintiffs were mistaken when they concluded they could use a tariff to impose liability upon warehousemen and others who are not designated as consignors or consignees. Clearly those cases which indicate that demurrage may be imposed by a tariff only authorize the imposition of such liability upon those who by the transportation contract in effect become consignors or consignees in their own name

Id., at 1126.

Not surprisingly, PEP ignores footnote 31 of the Middle Atlantic opinion, where the Court quotes from a decision involving demurrage from the Massachusetts Supreme Court:

> *If the consignee will take the goods, he adopts the contract.* But as the consignee and his assigns are not parties to the contract in the bill of lading, and are only liable upon the contract which may be implied upon the actual delivery of the cargo and waiver of his lien by the master, they are not bound to accept the cargo at any particular time, and incur no responsibility by a refusal or delay in accepting it.

Id., at 1119, n.31, quoting Gage v. Morse, 12 Allen 410, 90 Am. Dec. 155 (Mass. 1866)(emphasis added). Stated differently, if the receiver of a freight shipment (consignee) did not arrange for the shipment of the freight (PEP had nothing to do with making the shipping arrangements), did not participate in the preparation of the bill of lading (PEP had nothing to do with the preparation of the bills of lading), and has not agreed to pay the shipping charges (the shipping charges were not PEP's responsibility), that consignee always has the option of accepting or refusing delivery of the shipment when tendered. If such a consignee refuses to accept delivery, no liability attaches. Once delivery is accepted, however, the consignee becomes a party to the transportation contract.

As discussed more fully in CSX's brief in response to PEP's motion for summary judgment (docket entry no. 31), PEP's acceptance of the deliveries of plastic resin should be dispositive of the issue of whether PEP was the consignee of those shipments, or whether it was erroneously listed as the consignee on the bill of ladings. Both issues must be resolved in CSX's favor under the applicable law.

### PEP's Footnote 6.

In "footnote 6" of its opposition brief, PEP attempts to respond to the affidavit of William Graham submitted by CSX in support of its motion for summary judgment. CSX would first note that PEP has produced no evidence to refute the veracity or accuracy of the statements made by Mr. Graham in his affidavit. The fact that "Port Erie maintains that this phone call never even happened" (PEP's Brief at 14, n.6) is simply not evidence.

Significantly, PEP did not provide any response to Mr. Graham's statement that during the course of his phone conversations with Jim Witkowski of PEP he was instructed by Mr. Witkowski "that all information concerning the arrival of rail cars consigned to Port Erie Plastics should be provided directly to Presque Isle Trucking." Graham Affidavit at ¶ 7. Instead, PEP mischaracterized Mr. Graham's statement as simply an instruction from PEP that it was not to receive any paperwork concerning the freight shipments. PEP's Brief at 14, n.6. The statements in Mr. Graham's affidavit now stand as undisputed evidence in this case.[1]

PEP also complains that it did not have the opportunity to depose Mr. Graham, and that he was not disclosed to PEP until "the morning discovery closed." PEP served its first deposition notice in this case on January 24, 2006. The notice was issued pursuant to Fed. R. Civ. P. 30(b)(6) and identified the alleged agency relationship between Presque Isle Trucking and PEP in its list of topics to be covered. CSX

---

[1] As discussed more fully in CSX's brief in opposition to PEP's motion for summary judgment (Docket Entry No. 31), the circumstantial evidence developed in this case, standing alone without Mr. Graham's statements, also establish an agency relationship between PEP and Presque Isle with respect to the receipt of constructive placement notices. CSX's brief in opposition at 13 – 14.

4

forwarded information to PEP about Mr. Graham in a fax on the morning of February 1, 2006. The deposition of CSX's 30(b)(6) designee occurred on the morning of February 2, 2006. CSX's designee responded to all of PEP's counsel's questions concerning PEP's agency relationship with Presque Isle, including information concerning Mr. Graham's role in establishing an internal "customer profile" for PEP. See CSX's brief in response to PEP's motion for summary judgment at 5 – 6 and Exhibit D thereto (Docket Entry No. 31) Fact discovery in this closed on February 3, 2006.

At no time during or after the deposition of CSX's 30(b)(6) designee did PEP complain about any alleged inadequacies in the information provided by CSX's designee at his deposition. Rule 30(b)(6) simply does not obligate a party to produce a witness with personal knowledge of every topic identified by the party noticing the deposition. See CSX's brief in opposition to PEP's motion for summary judgment at 6, n.8 (Docket Entry No. 31) CSX's response to PEP's 30(b)(6) notice was in good faith and consistent with its obligations under that rule

## CONCLUSION

PEP has had two opportunities in this case to identify a single legal authority which supports the proposition that an entity that is both named as the consignee on a bill of lading and acts as the consignee by accepting goods delivered under that bill of lading is not liable for demurrage charges under a rail carrier's demurrage tariff. (PEP's brief filed in support of summary judgment (Docket Entry No. 19) and its brief filed in opposition to CSX's motion for summary judgment (Docket Entry No. 27)). It has failed to do so both times. Accordingly, this court should grant summary judgment to CSX on its claims for demurrage and should deny PEP's motion for summary judgment. Respectfully submitted,

/s/ Charles L Howard
Charles L. Howard
Jeffrey D. Cohen
**JANSSEN & KEENAN P.C.**
One Commerce Square
2005 Market Street, Suite 2050
Philadelphia, PA 19103
(215) 665-8888
(215) 665-8887 (fax)
E-mail: choward@janssenkeenan.com

Attorneys for Plaintiff
CSX Transportation, Inc.

Dated: March 17, 2006

## Certificate of Service

I, Charles L. Howard, hereby certify that on this 17th day of March, 2006, I caused a true and correct copy of the foregoing **CSX TRANSPORTATION, INC.'S MEMORANDUM OF LAW IN REPY TO DEFENDANT PORT ERIE PLASTIC'S BRIEF IN OPPOSITION TO CSX'S MOTION FOR SUMMARY JUDGMENT** to be made available to the following attorney for the defendant identified below *via* Electronic Case Filing:

                        Richard J. Parks
         MacDONALD, ILLIG, JONES & BRITTON
               **JANSSEN & KEENAN, P.C.**
                   Erie, Pennsylvania 16507

                                                       /s/ Charles L. Howard