IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC.<br>500 Water Street<br>Jacksonville, FL  32202-4423<br>　　　　　Plaintiff<br><br>　　v.<br><br>PORT ERIE PLASTICS, INC.<br>909 Troupe Road<br>Harborcreek, PA  16421<br><br>　　　　　Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br><br><br><br><br><br>CASE NO.:  05-139 Erie<br><br><br><br>RELATED TO DOCUMENT NO. 17<br><br><br>ELECTRONICALLY FILED |

### DEFENDANT'S REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HERE COMES defendant, Port Erie Plastics, Inc., and files this reply to plaintiff's brief in opposition to the motion for summary judgment.

**I.     BACKGROUND**

Plaintiff, CSX, Transportation, Inc., (CSX) commenced the instant lawsuit on May 10, 2005.  CSX is wrongly attempting to hold defendant Port Erie Plastics, Inc. (Port Erie) liable for $127,116 in demurrage fees improperly billed to Port Erie for plastic resin shipments occurring during the years 2002 and 2003.  NexPak, Inc., a customer of Port Erie, contracted the shipments in question with BP Amoco, and ultimately controlled the timing and quantity of shipments. Port Erie was never a party to the contract and is not liable for the claimed demurrage fees.

Port Erie filed a motion for summary judgment on February 20, 2006. CSX, after filing its own motion for summary judgment, submitted a brief in opposition to Port Erie's motion on March 13, 2006. Port Erie incorporates by reference its principle brief and brief in opposition to CSX's motion, and now files this reply to arguments put forth by CSX in its brief in opposition.

**II.    DISCUSSION**

CSX does not have any basis to hold Port Erie liable for demurrage fees. CSX, by its own admission, lacks any evidence that Port Erie actually consented to the transportation contract. CSX, by its own admission, also lacks any evidence that Port Erie received notices that are required by CSX's tariff to trigger demurrage fees.

As a result, in an apparent attempt to conjure up a ground for liability where none exists, CSX appears to have retreated to an argument that mere contact with the shipped goods is sufficient ground for demurrage liability under the tariff. As has been detailed in greater length by Port Erie in its principle brief, the Third Circuit has expressly held that such a theory cannot be a valid basis for liability. <u>Union Pacific Railroad Co. v. Ametek, Inc.</u>, 104 F.3d 558 (3d Cir. 1997), citing <u>Middle Atlantic Conference v. United States</u>, 353 F. Supp. 1109 (D.D.C. 1972).

CSX has misrepresented a holding of the Supreme Court to give apparent support to its specious argument, stating: "The weight of authority seems to be that the consignee is prima facie liable for the payment of freight charges when he accepts the goods from the carrier." (Plaintiff brief in opposition, p. 9, citing <u>Pittsburgh, Cincinnati, Chicago & St. Louis Ry. v. Fink</u>, 250 U.S. 577, 40 S. Ct. 27 (1919) ). <u>Fink</u> is factually distinguished from the instant case. Moreover, CSX contorts the holding in <u>Fink</u>, to address an issue not even considered by the <u>Fink</u> court.

2

In <u>Fink</u>, the railroad carrier charged Mr. Fink a fee that was erroneously lower than the tariff rates. <u>Fink</u>, 250 U.S. at 580. Fink had personally accepted delivery of rare collector coins, and even sold a few of the coins by the time of the lawsuit. <u>Fink</u>, 250 U.S. at 580. Further, Mr. Fink had paid the freight fees charged by the railroad at the time of their delivery. <u>Fink</u>, 250 U.S. at 580. Fink's defense against liability essentially rested upon his ignorance of the tariff rates. <u>Fink</u>, 250 U.S. at 580. He also pointed to the fact that he did not own the coins until he received them at the end of the shipment. <u>Fink</u>, 250 U.S. at 582.

The Court, citing law that supported the railroad's right to collect the full fee from the contractual consignee, stated that ignorance of the rates was not a sufficient defense against a contract party's liability. <u>Fink</u>, 250 U.S. at 581-2. The Court then went on to say that a contractual consignee's liability under the tariff does not rest upon mere ownership of the materials at the time of transit. <u>Fink</u>, 250 U.S. at 581-82)

The facts that distinguish <u>Fink</u> from the instant case are numerous. First, unlike Port Erie, (and like every case cited by CSX) Mr. Fink did not dispute his designation as a consignee. Second, distinguished from Port Erie, Mr. Fink paid the freight charges billed to him. Finally, distinct from Port Erie, Mr. Fink physically accepted ownership and control of the coins at the time he accepted them from the railroad. While CSX wishes this Honorable Court to ignore these critical differences, these facts ultimately demonstrate the irrelevance of <u>Fink</u> to this case.

Moreover, <u>Fink</u> does not even address the legal issues of the present case. <u>Fink</u> stands for the proposition that mere payment of fees errantly undercharged by the railroad does not provide a defense for parties to the transportation contract from liability for the full tariff rate. See <u>Griffin Grocery Co. v. Pennsylvania Railroad Co.</u>, 92 S.E. 2d 254, 255 (Ga. App. 1956) (<u>Fink</u>, is focused upon the assessment of additional charges when a lesser charge has been paid by

3

mistake).[1]  The Court assumed, because the facts dictated it, that Mr. Fink was a consignee.  The Court never assessed his consignee status because it was never an issue.  Fink is, quite obviously, not on point.

Port Erie disputes that it is a consignee, and disputes any knowledge of, or consent to, the relevant transportation contract.  The Third Circuit stated in explicit terms that railroads cannot assess liability for demurrage to persons who are not a party to the transportation contract.  Ametek, Inc., 104 F.3d at 563-4.  Further, the Third Circuit references a case from the district court of the District of Columbia, which patently states that the basic principles of contract law are applicable to liability under transportation tariffs.  There must be evidence of consent to the contract. Middle Atlantic, 353 F. Supp. 1116-19.  As a result, warehouseman and other similarly situated persons cannot be held liable for demurrage fees merely because they handle the shipped products at some point in the transit stream.  Middle Atlantic, 353 F. Supp. 1116-19.

In the present case (as stated in greater detail in Port Erie's principle brief) Port Erie operated, for all intents and purposes, in the capacity as a warehouseman for the plastic resin as related to CSX.  Port Erie does not, as misrepresented by CSX, merely claim that its lack of ownership of the plastic resin is a sufficient defense against demurrage liability.  Rather, Port Erie is not liable because it lacked both ownership and control over both the product and the shipment of the product at all times relevant to the transportation contract.  Further, Port Erie was completely unaware of, and did not consent to, the transportation contract.

---

[1] CSX also cites to a case from a state court decision from Maine as support for its interpretation of Fink.  Wheaton Van Lines v. Gahagan, 669 A.2d 745 (Me. 1996).  Yet, Wheaton involved a person who personally arranged for the rail delivery of his household furniture from his former residence to his new residence, following a relocation prompted by his sale of his company.  His wife accepted delivery of their furniture.  He subsequently attempted to avoid liability for rail charges, pointing to the designation of the company as the consignor and consignee.  His name was only listed in parenthesis.  The court found that his attempted dodge was too clever by half, noting that he was a principal party in this shipping contract, where his involvement in every phase of the shipment was patent.  Wheaton 669 at 748.  Similar to Fink, this case is distinguished on the critical facts of involvement with and awareness of the shipping contract, as well as his intimate connection to the shipped items.

Port Erie's lack of ownership is undisputedly documented in the fact that it only accounted for the plastic resin as an offset when it invoiced NexPak for the finished DVD cases. Port Erie used NexPak's resin to manufacture the DVD cases with NexPak's machines and NexPak's molds. This enabled NexPak to retain complete control over raw materials costs and most aspects of production. The business arrangement between NexPak and Port Erie was arranged in such a manner that Port Erie's role was, essentially, to supply the labor.

Port Erie's lack of substantial control (either legal or beneficial) over the resin is demonstrated by the undisputed fact that Port Erie served as a conduit of information from NexPak to Presque Isle Trucking, the common carrier who transported the resin from the rail terminal to Port Erie's manufacturing facility. All movement of resin, as it related to Port Erie and Presque Isle Trucking, was done only at the behest of NexPak. Further, on more than one occasion, NexPak diverted resin rail car shipments (even pulling them out of Mont Fort Terminal) without the knowledge of Port Erie. Certainly, such movement would have been unthinkable if Port Erie had a legally cognizable interest in the resin shipments.

Unlike Fink, where the defendant took possession of the coins and subsequently sold them for personal profit, Port Erie did not, in any practical sense, assume either control or ownership of the plastic resin. As a result, CSX's attempt to create a contractual obligation under the tariff by misconstruing Port Erie's connection to the plastic resin shipments fails for a complete lack of supporting evidence.

In the final analysis, CSX attempts to give its tariff the power to assign liability to a party even where there is a complete lack of evidence of the essential elements of contract. The Third Circuit expressly invalidates such a position. Accordingly, Port Erie's motion for summary judgment must prevail.

## III.  CONCLUSION

For the foregoing reasons, Port Erie respectfully requests this Honorable Court grant Summary Judgment in favor of defendant Port Erie, Inc., and against plaintiff CSX Transportation, Inc.

Respectfully submitted,

s:/ *Scott T. Stroupe*

Richard J. Parks
Pa. Bar I.D. No. 40477
Scott T. Stroupe
Pa. Bar I.D. No. 89496
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7654
FAX (814) 454-4647
rparks@mijb.com

Attorneys for defendant
 Port Erie Plastics, Inc.

#945268

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendant's Reply to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment was served upon the following attorney of record, via electronic transmission by the procedures of this Court as follows, this 27th day of March, 2006:

    Charles L. Howard, Esq.        choward@janssenkeenan.com

          *s:/ Scott T. Stroupe*
          Scott T. Stroupe, Esq.