**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-139 Erie |
| | ) | |
| PORT ERIE PLASTICS, INC., | ) | Judge Sean J. McLaughlin |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

Presently pending before the Court are cross-motions for summary judgment.

**I. BACKGROUND**

This case arises from "demurrage" charges assessed by Plaintiff, CSX Transportation Inc. ("CSX"), a rail carrier providing interstate transportation of freight, against Defendant, Port Erie Plastics, Inc. ("Port Erie"), a custom injection molding business located in Harborcreek, Pennsylvania. As described in further depth below, "demurrage" is a charge exacted by a carrier from a shipper or consignee on account of a failure to load or unload transportation cars with the specified time prescribed by applicable tariffs. See Union Pacific Railroad Co. v. Ametek, Inc., 104 F.3d 558, n.2 (3rd. Cir. 1997). CSX filed the instant lawsuit on May 10, 2005, in response to Port Erie's refusal to pay the assessed demurrage. Port Erie contends that it is not liable for the charges in question.

At all times relevant to this case, Port Erie had been under contract to an entity known as NexPak, a company that sells custom cases for, among other items, digital video discs (DVDs). Throughout the duration of this business relationship, Port Erie molded DVD cases for NexPak. (Defendant Port Erie's Motion for Summary Judgment, Ex. A; Ex. C). By terms of an agreement between Port Erie and NexPak, entered into in July, 2000, NexPak agreed to supply the plastic resin to Port Erie to enable Port Erie to manufacture the DVD cases. The agreement stated that:

> [Port Erie] will be operating with the understanding that ownership
> of the resin will not transfer to Port Erie until the material is delivered
> to our facility in Harborcreek, PA.  Therefore, ownership and all risk

1

of loss will remain with NexPak, and or the shipping companies, while the resin is in transit or in storage. . .

(Defendant Port Erie's Motion for Summary Judgment, Ex. C).

The mechanics of this arrangement required NexPak to purchase resin from its supplier, BP Amoco, who then contracted with CSX to ship the plastic resin to Erie by rail car. However, because Port Erie did not have a rail car siding at or near its facility, Port Erie engaged the common carrier services of Presque Isle Trucking ("PTI"). PIT would unload plastic resin from railcars as they arrived at the Mount Fort Terminal in Erie, Pennsylvania, and load the resin into trucks for shipment to the Port Erie facility. Upon arrival, PIT would place the plastic resin into Port Erie's storage silos to await production. NexPak provided Port Erie with the amount of resin necessary to complete each individual DVD case order, with Port Erie taking title to the specific quantities of plastic resin only at the moment that Port Erie actually removed them from storage for production. (Plaintiff CSX's Motion for Summary Judgment, Ex. A, Deposition of James Witkowski, 14-22).

At all relevant times, CSX had a tariff in effect which governed, *inter alia*, a consignee's duties with respect to handling inbound rail cars delivered from CSX and the demurrage charges that applied for failure to handle rail cars in a timely fashion. (Plaintiff CXS's Motion for Summary Judgment, Ex. D, Underwood Affidavit). The tariff containing these rules is identified as CXST 8100 - Demurrage Storage Provisions; Section VIII-C." ("CSXT 8100"). Under this tariff, a demurrage charge is imposed on a shipper of freight at origin or a consignee at destination when, essentially, a railcar sits at the CSX yard for more than two days without being unloaded. In order to start the demurrage clock running, CSX faxes a "constructive placement notice" to the customer notifying them that the railcar has arrived and is available for unloading. At that point in time, the customer/consignee is responsible for ensuring that the railcar is physically unloaded.

In this instance, CSX, upon arrival of the rail cars at the CSX yard in Erie, issued a constructive notice placement to PIT, which had been designated by Port Erie as the party to whom such notice should be given. In the event that a railcar was not unloaded within the two day period specified by the tariff, CSX would impose a demurrage charge. Between May of 2002 and October of 2003, CSX assessed $127,116.00 in demurrage charges pursuant to the CSX tariff. CSX contends that, as consignee of the plastic resin, Port Erie is liable for those charges.

The record reflects, and CSX admits, that Port Erie and CSX never directly contracted with

2

one another.  (Ex. P, Underwood Deposition, p. 7).  However, the bills of lading generated by the seller of the plastic resin designated Port Erie as the consignee of the resin.  Port Erie contends that it never consented to act as a consignee, never knew that it had been listed as a consignee on the bills of lading, never communicated with CSX as to any such designation, and never acted in a manner demonstrating ownership or control of the resin, as would a consignee.

On February 20, 2006, Port Erie moved for summary judgment.  On February 23, 2006, CSX filed a cross motion for summary judgment.  Oral argument on the motions was held on August 19, 2006.  This issue is thus ripe for resolution.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party.  Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## III. DISCUSSION

"[L]iability for demurrage must arise out of a contractual relationship."    See CSX Transportation Co. v. Novolog Bucks County, 2006 WL 1451280, *7 (E.D. Pa 2006) (quoting S. Pac. Trans. Co. v. Matson Navigation Co., 383 F.Supp. 154, 156 (N.D.Cal.1974)) ("The promise to pay demurrage need not be an express one, but may be implied in order to compensate the carrier for the use of its equipment. But, while the obligation to pay may be implied, the promise nonetheless arises out of the contractual relationship and may only be imputed to parties to the contract.") (internal citations omitted).  A contractual relationship is therefore a condition precedent

to demurrage liability.  Id.

In other words, in order for a carrier to establish liability for demurrage, it must first establish that it had a contractual relationship regarding the railcars with the entity that detained the railcars. Only after a contractual relationship is established between the parties can demurrage liability be imposed against a party for detaining the railcars.  Id.  If a contractual relationship with respect to the railcars is established, liability may then be imposed in one of three ways: via specific contractual provision regarding demurrage or, in the absence of a contractual provision, under statutory tariff or prevailing industry custom. See Evans Prods. Co v. Interstate Commerce Comm'n, 729 F.2d 1107, 1113 (7th Cir. 1984) ("Liability for freight charges may be imposed only against a consignor, consignee, or owner of the property, or others by statute, contract, or prevailing custom.").

Here, CSX is seeking to impose demurrage liability upon Port Erie via its tariff, based upon Port Erie's designation as consignee in the bills of lading.  In CSX's tariff, a consignee is defined as "[t]he party to whom a shipment is consigned, or the party entitled to receive the shipment."[1] Typically, "consignees play no role in the negotiation of rates, the payment of freight rates, the routing of freight, or the preparation of the bill of lading."  Novolog, 2006 WL 1451280 at *6, n. 10.

However, "the cases are legion in holding that responsibility for demurrage charges cannot be imposed unilaterally against an individual or entity that was not a party to either a transportation contract or an independent contract in which that party specifically accepts liability for demurrage."

---

[1]     Black's Law Dictionary defines a consignee as:

> One to whom a consignment is made.  Person named in bill of lading to whom or to whose order the bill promises delivery.  In a commercial use, 'consignee' means one to whom a consignment may be made, a person to whom goods are shipped for sale, or one to whom a carrier may lawfully make delivery in accordance with his contract of carriage, or one to whom goods are consigned, shipped,  or otherwise transmitted.

See Black's Law Dictionary 307 (6th Ed. 1990) (internal citations omitted); see also Novolog, 2006 WL 1451280 at *6, n. 10.

4

Novolog, 2006 WL 1451280 at *8; see also Illinois Cent. R. Co. v. South Tec Development Warehouse, Inc., 337 F.3d 813, 820 (7ᵗʰ Cir. 2003) ("[B]eing listed by third parties as a consignee on some bills of lading is not alone enough to make [the warehouse] a legal consignee liable for demurrage charges, although it, coupled with other factors, might be enough to render [it] a consignee."); Union Pac., 104 F.3d at 564 (holding that demurrage could not be assessed against a warehouse because it "was not a party to the underlying transportation contracts, and it did not separately agree contractually to accept liability."); Evans Prods., 729 F.2d at 1113 ("Attempts to support tariffs assessing freight charges against others tangentially involved in the shipment, such as warehousemen, pier operators, brokers, steamship agencies and others similarly situated have failed. No liability exists merely on account of being named in the bill of lading, or handling the property.") (citations and quotations omitted); CSX Transportation, Inc. v. City of Pensacola, Fla., 936 F.Supp. 880, 884 (N.D. Fla 1995) ("[O]nly a party to the rail transportation contract may be liable for demurrage . . . The unilateral action of one party in labeling an intermediary as a consignee does not render the putative consignee liable for demurrage."); Southern Pac. Transp. Co. v. Matson Navigation Co., 383 F.Supp. 154, 158 (N.D.Cal.1974) ("[O]ne not a party to the contract of transportation cannot be charged demurrage") (internal citations omitted); Middle Atlantic Conference v. U.S., 353 F.Supp. 1109, 1116 (holding "that the proposed tariff was unlawful insofar as it attempted to impose liability for demurrage charges upon an agent who was not a party to the contract of transportation.").

Therefore, in resolving the cross motions for summary judgment, the critical question is whether there is a disputed issue of fact as to whether Port Erie did or did not consent to act as a consignee. The designation as consignee in the bills of lading, without more, is insufficient to create liability under a tariff because "[a] tariff is an inappropriate instrument to legislate liability with respect to a nonconsenting party . . ." Middle Atlantic, 353 F.Supp. at 1122; Ametek, 104 F.3d at 563-64 (holding that liability for a demurrage tariff could not be imposed upon a consignee who was not a party to the contract).

As previously discussed, Port Erie argues that there is no evidence of record from which a reasonable inference could be drawn that it consented to consignee status. (Port Erie's Motion for Summary Judgment, Dkt. #17, Ex. P, Deposition of John Underwood, p.7). John Johnson, the

President of Port Erie, submitted a sworn affidavit declaring that "[a]t all times relevant to the instant case, Port Erie was not a consignee, nor did it ever consent to being designated as a consignee, in the shipment of plastic resin material by CSX for NexPak." (Id., Ex. A, Johnson Affidavit, ¶ 21). Similarly, James Witkowski, a purchasing manager for Port Erie, averred in an affidavit that "[a]t no time did [CSX] inform me that Port Erie was designated as a consignee to the shipments in question." (Second Affidavit of James Witkowski, ¶ 5).

At deposition, Witkowski testified that he had never seen a bill of lading designating Port Erie as consignee:

> Q:    Do you recognize this document?
>
> A:    I know what it is.
>
> Q:    What is it?
>
> A:    It's saying it's a bill of lading for something that was shipped.
>
> Q:    Did Port Erie receive bills of lading like this for the shipments of the resin?
>
> A:    No.
>
>     *     *     *     *     *     *     *     *
>
> Q:    This identifies Port Erie Plastics as the "Ship to" or the "Consignee" party. Did you see that?
>
> A:    Yes.
>
> Q:    Do you have an understanding of why Port Erie Plastics would have been identified as the consignee on the bill of lading?
>
> A:    No.

(Port Erie's Motion for Summary Judgment, Dkt. #17, Ex. O, Deposition of James Witkowski, pp. 44-45). Port Erie asserts that any and all reference to Port Erie as consignee of the resin was generated by BP Amico, the company that produced the resin and created all shipping documentation for the NexPak/CSX/Port Erie transactions. (Port Erie's Motion for Summary Judgment, Dkt. #17, Ex. O, Witkowski Deposition, pp. 44-45; Ex. P, Underwood Deposition, p.8).

A thorough review of the record reveals that CSX has not offered any evidence to rebut Port

Erie's sworn declarations that Port Erie had not consented to, or even been aware of, its designation as consignee of the plastic resin. As previously stated, "the cases are legion in holding that responsibility for demurrage charges cannot be imposed unilaterally against an individual or entity that was not a party to either a transportation contract or an independent contract in which that party specifically accepts liability for demurrage." Novolog, 2006 WL 1451280 at *8 (citing, e.g., South Tec, 337 F.3d at 820; Middle Atlantic, 353 F.Supp. at 1116).

CSX argues alternatively that, by accepting delivery of the resin and by exercising exclusive control over the resin upon arrival at the CSX rail yard in Erie, Port Erie became a consignee by virtue of its conduct. CSX cites Pittsburgh, Cincinnati, Chicago & St. Louis Ry. v. Fink, 250 U.S. 577 (1919), for the proposition that "the weight of authority seems to be that the consignee is prima facia liable for the payment of freight charges when he accepts the goods from the carrier." Id. at 27. In Fink, however, the defendant never disputed his status as consignee. Rather, the holding of Fink was simply that a contractually obligated consignee cannot raise a defense of ignorance of the applicable rates to avoid liability. Id. at 581-82.

Indeed, CSX raised a similar argument in Novolog, asserting that the defendant should have been liable for its demurrage tariff because "through its receipt of notices and requests for rail car, it implicitly confirmed that it was the consignee for each bill of lading." Novolog, 2006 WL 1451280 at *10. The court rejected this argument, noting again that "the case law is clear that no industry-wide custom permits the imposition of demurrage charges against a nonparty that is unilaterally designated as the consignee." Id. (citing Evans Products, 729 F.2d at 1113). The court concluded by holding that "the unilateral designation of Novolog as consignee on the relevant bills of lading is not sufficient to make Novolog a legal consignee for purposes of imposing demurrage liability." Id. at *11.

## IV. CONCLUSION

We conclude for the reasons previously discussed that Port Erie was not a consignee as a matter of law. Therefore, CSX's motion for summary judgment is denied and Port Erie's motion

for summary judgment is granted.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CSX TRANSPORTATION, INC.,           )
                                    )
        Plaintiff,                  )
                                    )
                    v.              )        Civil Action No. 05-139 Erie
                                    )
PORT ERIE PLASTICS, INC.,           )        Judge Sean J. McLaughlin
                                    )
                                    )
        Defendant.                  )

## ORDER

AND NOW, this 29th day of September, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion for Summary Judgment of Defendant Port Erie is GRANTED and the Motion for Summary Judgment of Plaintiff CSX is DENIED. JUDGMENT is Entered in favor of the Defendant, Port Erie Plastics and against the Plaintiff, CSX Transportation.  Accordingly, this action is DISMISSED.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. _nk__

9